No. 39,479

THE KANSAS POWER & LIGHT COMPANY, a Corporation, *Appellant,*
v. JOHN WATERS and MARY WATERS, his Wife, *Appellees.*

(272 P. 2d 1100)

Opinion filed July 6,
1954.

*Earl B. Shurtz,* of Emporia, argued the cause, and *Clarence V. Beck,* and
*Samuel Mellinger,* both of Emporia, were with him on the brief for the appel-
lant.

*Everett E. Steerman,* of Emporia, argued the cause, and *Elvin D. Perkins,*
of Emporia, was with him on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: Plaintiff commenced this action to quiet its title to
the small tract of real estate later mentioned. The defendants filed
their answer and cross petition in which they sought to quiet their
title and to recover a money judgment. The trial resulted in a judg-
ment quieting title in the defendants and the plaintiff appeals.

Although there is some slight discrepancy in north and south dis-
tances as noted on a plat attached to the abstract, it discloses gen-
erally that Lot 85 on Merchant street in the city of Emporia is 50
feet wide north and south and 140 feet long east and west, and that

immediately to the south is Lot 83 which is also 140 feet long and is 50 feet wide fronting on Merchant street; that to the west of both lots is a north and south alley and from that alley another alley 10 (or possibly 11) feet wide extends east along the south side of Lot 83 to a point 50 feet west of the east line of the lot and in such manner that the west 90 feet of Lot 83 is 40 (or possibly 39) feet wide.

In its original petition the plaintiff alleged it was the owner of and in possession of a tract commencing 50 feet west of the southeast corner of Lot 83; thence north 26 feet 7½ inches; thence west 5 feet 4 inches; thence south 7 feet 9 inches; thence west 5 inches; thence south 18 feet 10½ inches; thence east 5 feet 9 inches, and that it had been in the actual, open, visible, notorious, hostile, exclusive, uninterrupted, adverse possession thereof under claim of ownership for more than fifteen years last past; that defendants claimed some estate in that real estate the nature of which was unknown to plaintiff and plaintiff was entitled to have its title quieted against that claim, and it prayed accordingly. It is here noted that the south 10 (possibly 11) feet of the above described tract lies in the east and west alley above mentioned. At the beginning of the trial plaintiff amended its petition to describe a tract commencing 50 feet west and 11 feet north of the southeast corner of Lot 83; thence north 10 feet 6 inches; thence west 5 feet 6 inches; thence south 10 feet 6 inches; thence east 5 feet 6 inches.

The answer of defendants consisted of a general denial and an allegation they were the owners and in possession of a part of Lots 83 and 85 described as commencing at a point 50 feet west of the northeast corner of Lot 85; thence west 26 feet; thence south 89 feet; thence east 26 feet; thence north 89 feet to the place of beginning, and had been in possession since April 16, 1949, and have each and every right, privilege and appurtenance thereto appertaining including the reservation set out and contained in a certain deed dated April 2, 1923, from Robert L. Jones and wife who were the owners of the real estate which lies immediately to the east of the tract owned by the defendants, the reservation reading as follows:

"And said parties of the first part hereby save, except and reserve to themselves, their heirs, legal representatives or assigns, the full right to at any time attach to the North eighty-three feet of the West wall of the building now on the granted premises, such one or two story building as the first parties, their heirs or assigns may hereafter construct on lands adjoining the granted premises on the west. Said right being to fully attach and connect any such one or two story building to any building now or thereafter on the granted

premises, including the right to close any openings in said west wall, all without further or other consideration or compensation to the grantee herein.

"In the event of the reconstruction of the west wall of the present building on the granted premises, the rights hereby excepted or reserved shall pertain in like manner to any new or reconstructed west wall."

And they alleged that by reason thereof they were not only owners of the tract conveyed to them but of a valuable right by way of easement running with the lands to at any time in the future use the brick wall along their east boundary, which right had not been changed, modified or altered by the former owners of the real estate nor by these defendants; that they and their predecessors paid the taxes upon the real estate during all of said period of time and have claimed full title and ownership; and that no one on behalf of plaintiff claimed any right, title, interest, lien or easement upon the real estate purchased and owned by defendants and they prayed that plaintiff take nothing and that their title should be quieted. In their cross petition, defendants alleged that about the time they purchased they demanded that plaintiff remove certain property from the involved tract or pay rent for the use thereof; that plaintiff's property had not been removed and defendants were entitled to rents for which they prayed.

The plaintiff's reply to the defendants' answer denied that defendants had any right in its west wall; that it had been in adverse possession of the wall, and in the event the reservation created a valuable right in defendants it had been lost by reason of plaintiff's adverse possession. Its answer to the defendants' cross petition was a general denial.

The trial resulted in a judgment denying plaintiff any relief under its petition, and quieting the title of the defendants, whose claim for a judgment for rents was denied. Plaintiff's motion for a new trial was denied and it perfected its appeal to this court.

Appellant contends that the judgment denying it relief was contrary to the evidence and to the law applicable. Consideration of the contention compels a review of the evidence.

As disclosed by the abstract and counter abstract, supplemented by statements included in the briefs for both parties, and concerning which statements there is no particular dispute of fact the following appears: The Kansas Electric Power Company which was the predecessor in title and interest of the present appellant prior to July, 1949, acquired title to the east fifty feet of Lots 83 and 85 by warranty deed from Electric Office Realty Company, dated July 31,

1925, the deed incorporating as part thereof certain reservations contained in a deed from Robert L. Jones and his wife to one T. T. Parker dated April 2, 1923, including the reservation quoted above. About 1924 the company or a predecessor in title caused to be erected a building covering all of the above described real estate, and at the same time excavated down to its basement level a strip about 5 feet 6 inches wide east and west and about 21 feet 6 inches long north and south and extending north from the south line of the east and west alley and immediately west of the west line of the fifty feet conveyed as above stated. This strip occupied about 10 or 11 feet of the alley and the land now involved. Concrete walls were installed and carried upward about two and one-half or three feet above ground level. A slab was constructed over the top equipped with doors and apparatus to raise and lower goods from and to the basement level by use of a freight elevator in the basement. When constructed there were doors permitting entrance to the first floor of appellant's building. About 1948 the doors to the first floor were altered and closed and in more recent years the top of the dock on the involved real estate has in part been used to hold a trash receptacle and some air conditioning equipment of appellant. In a negative way it may be stated here there was no evidence that any predecessor in title or interest of the appellant ever had any record title to the involved real estate, and if there ever was any oral or written agreement between it and the owner of the real estate on the south for the use thereof, none was shown. A number of witnesses testified as to the use of the dock. One said it was constructed in 1924 and was used for loading and unloading into the building; that it was a regular occurrence, and the use of the dock was not shared with anyone else; that at the time of the trial an air conditioning unit about six feet square and a trash box were located on the dock, which was about three feet high; that Robert L. Jones, an attorney and abstracter in Emporia, was the owner of appellees' land until he sold it to them. Another witness testified he was an employee of appellant and had worked in the material room "by the dock," had charge of merchandise and electrical equipment loaded and unloaded on it; that there were drains, sewer and gas pipes in the basement; that he saw the dock recently and it was in the same condition as before, and, in his opinion, the dock and the area under it were all constructed at the same time. Other testimony of this kind need not be reviewed. The appellees' demurrer to appellant's evidence was overruled.

Appellee John Waters testified in his own behalf that he owned the tract lying west of appellant's building since April, 1949, and had been in possession since; that there is a restaurant at the northeast corner of his tract tied into the wall of appellant's building and extending back 30 to 32 feet (there is no evidence as to when the restaurant building was constructed); that when he purchased there was no exception as to the dock; that so far as he knew no one claimed it. In answer to a question asked on direct examination as to when he first learned that the appellant was using a part of the land (dock) he answered that he knew it before he bought the land and after he bought he went and talked with Peterson, the appellant's division manager, and asked if the air conditioner was on appellees' property he wanted it moved or to be paid rental. In a later conversation he made no demand for rent. He did not hear from Peterson any more until he was served with summons. He also testified as to paying taxes on the entire tract purchased by him. On cross examination he testified about owning a part of Lots 85 and 83 abutting the north and south alley to the west and building a garage thereon in 1946, and when he purchased the 26 x 89 tract in 1949 he understood the south line was the same as the garage property immediately to the west (north line of east and west alley); that he did not use the alley much; that he had noticed the dock and knew that the north end of it was north of the back end of his garage, and that when he purchased the 26-foot strip he knew the dock was on it and had been on it since 1946; that he never used the dock and knew the appellant did. In a colloquy between court and counsel, appellant did not admit appellees had paid taxes on the dock, the court inquired if it had been taxed separately and counsel for appellant said "I think not." In answer to a question by the court that no one paid taxes on the dock counsel answered that the building had been taxed and the dock was part of the building. Then the court stated that unless it could be agreed on probably "we" should have the records. The record discloses no agreement nor any further evidence on the point. Appellees' only other witness was the register of deeds who produced the record of the deed containing the reservation above mentioned.

Appellant's contention is that the evidence discloses no dispute as to the facts and the question is whether the legal effect has been properly declared, and that under the undisputed evidence it acquired title by adverse possession. Appellees, however, contend that the trial court had the duty of drawing reasonable inferences

and conclusions from the proven facts (e. g. *Brothers v. Adams,* 152 Kan. 675, 107 P. 2d 757); that if different minds may reasonably come to different conclusions, the findings of the triers of fact are conclusive on appeal (e. g. *Bentley v. Keegan,* 109 Kan. 762, 202 Pac. 70); and that the controlling question is whether there was sufficient evidence to support the judgment (e. g. *Tucker v. Hankey,* 173 Kan. 593, 250 P. 2d 784).

In a preliminary way it may be noted that this is not a case of location of a boundary line or mistaken belief as to its location and authorities cited on that phase of adverse possession need not be reviewed. There is no evidence but that the parties interested at the particular times involved knew exactly where the west line of the east fifty feet of Lots 83 and 85 was and is. While the abstracts contain no specific evidence as to the chain of title to any of the real estate involved, in the only deed received in evidence, being one dated July 31, 1925, from Electric Office Realty Company to Kansas Electric Power Company conveying the last above described lands, which deed contains recital of the reservation above set forth, it is recited also that the real estate was conveyed by Robert L. Jones and wife to T. T. Parker by deed dated April 2, 1923, and that it is the same premises conveyed by Albert Emanuel and wife to the grantor by deed dated June 11, 1923. The deed and the record as abstracted are silent as to any conveyance from Parker to Emanuel.

It is further noted the evidence discloses without dispute that the dock and the structures and excavation under it were constructed and made on the presently involved land and a portion of the abutting alley in 1924, and that the dock and the uses made of it were entirely visible from the outside of the building to which it was attached and to which it afforded entrance. And it may also be stated that if adverse possession by the appellant obtains here it commenced in 1924 and was completed, insofar as the statute of limitations is concerned, in 1939 and that there is no evidence that anyone disputed whatever right, title and interest or claim of ownership the present owner or its immediate predecessor in title had, until appellee John Waters questioned it in 1948. The evidence shows without dispute that appellee Waters knew of the presence and use of the dock as early as 1946 and that when he purchased the 89 x 26 foot tract, described in his answer, in 1948, he made no inquiry of the appellant as to its right, title, interest or claim

of ownership in the dock or the real estate on which it was constructed and did not do so until after he had acquired title to the 89 x 26 foot tract. The question then is did the appellant or its predecessor in title acquire ownership of the land in dispute by adverse possession commencing in 1924.

Appellant's argument that it had acquired title by adverse possession runs that such possession may be established independently of title conferred by written instrument or otherwise, so long as its possession was adverse and hostile (*Casner v. Common School District No. 7*, 175 Kan. 551, 265 P. 2d 1027); that there is and was no mistake as to boundary lines; that adverse possession is a matter of intention, which need not have been manifested by words of mouth, but by the acts done; that to constitute adverse possession the acts done must be such as to give unequivocal notice of the claim to the land, adverse to the claim of all others and of such character and so openly done that the real owner will be presumed to know that the possession taken is adverse to his title (*Tucker v. Hankey*, 173 Kan. 593, 250 P. 2d 784, and cases cited); that the act of itself or its predecessor in 1924 in taking possession and in making the improvement on land to which it had no title was necessarily hostile to the true owner and its continued, undisputed possession thereafter was adverse, and its title had ripened before the present appellees raised any question as to its ownership and under such circumstances the trial court erred in denying it the relief for which it prayed. As above indicated appellees contend the trial court had the duty of drawing reasonable inferences from the evidence, and having done so its conclusion is controlling. The general correctness of that rule need not be debated, but it is not to be interpreted as holding the trial court may draw inferences from matters as to which the evidence is silent or contrary to the evidence received. As appellees point out, the trial court was not requested to make conclusions of fact and of law, under G. S. 1949, 60-2921, and it did not do so. We have before us only the judgment and what inheres in it. Discussion as to the evidence and inferences and conclusions to be drawn therefrom cannot be divorced from the question whether there was evidence that appellant's possession was adverse. Appellees contend the evidence and the inferences and conclusions to be drawn therefrom warrant the judgment rendered.

With reference to whether the possession of appellant and its

predecessor in title was adverse, appellees point out that appellant accepted a deed, made after the dock had been constructed, which not only did not pretend to convey the land on which the dock was constructed, but did contain the reservation as to the right of the owner on the west to attach to and use the north 83 feet of the wall. Factually the south end of the 83 feet would overlap the north end of the dock to the extent of about 4 feet 6 inches, but otherwise the reservation did not affect the dock. Appellees also contend that the presumption is that the possession of real estate is in subordination to the true title and that when appellant entered into possession under its deed it is presumed that it claimed only the title given it by its deed, citing *Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836. We need not debate that those presumptions obtain, but they are presumptions only and may be overcome by proof.

The dock had been constructed and was in use before appellant took title. Whatever may have been the situation as to title when the dock was built, it was being used as an appurtenance to the building at the time appellant's predecessor received the deed of July 31, 1925, for the real estate on which the building stood. The deed contained the usual language that the grantee was to have and to hold all and singular the tenements, hereditaments and appurtenances belonging to the property conveyed. But the situation presented by the evidence is that whether it be considered the appellant's predecessor, by reason of the description, received no title to the dock, or that by reason of the provisions as to appurtenances that it did, the appellant's predecessor did take possession of the dock and openly use it for its own purposes and to the exclusion of others from 1925 on. No one questioned its right until appellees did so in 1948. Whether made under title or under no title at all, appellant's predecessor made entry in 1924, constructed improvements, held the same for its sole use and benefit and was in open and notorious possession. The evidence is that no one other than the appellant and its predecessors used the dock and that the use of the land on which the dock was situated was adverse to the true owner seems to be the only conclusion that can be drawn.

Appellees couple an argument that a plausible conclusion the use of the dock was permissive from the fact the south portion was constructed in a public alley with one that the evidence as to what uses were made of the area below the top of the dock is of little value because there is no showing the owner of the land on which it was

situated had any knowledge or information as to such uses. We do not put any weight thereon but it seems that if the appellant and its predecessor would knowingly build a dock in a public place where, so far as the record shows, it had no right to do so (see e. g. G. S. 1949, 14-424) by the same token they would not hesitate to appropriate adjoining lands, privately owned, to their own use. The dock itself was two and a half to three feet in the air. Doors for loading and unloading were placed in the top; loading and unloading took place from 1924 on; all was clearly visible, and that the land on which the dock stood was appropriated to the use of appellant and its predecessor stands out clearly in the evidence. The fact the owner of the adjoining property did not know each and every use made of the area below the dock is not of consequence; it was not necessary that the adjoining owner know of every use that was made of the involved area.

As has been stated, there was no evidence that appellant and its predecessors used the land involved under any permission from or arrangement with the owner of the adjoining real estate leading to any conclusion that they had only a limited right, and the trial court was not nor is this court warranted in assuming there must have been some sort of understanding between appellant's and appellees' predecessors in title at the time the dock was constructed or thereafter.

Laying to one side any conjecture or surmise as to what may have lead up to its doing so as justification therefor, the record in this case discloses that without any right or title thereto of any kind or character, and against any title or right of the owner thereof, a predecessor in title of the appellant entered upon and took possession of the involved real estate, made lasting, valuable and visible improvements thereon and since then it and its successors continued in sole possession and used the same for their own purposes against and to the exclusion of the one holding the record title for a period in excess of fifteen years and obtained title by adverse possession.

The judgment of the trial court is reversed and the cause remanded with instructions to render judgment quieting the title of the plaintiff appellant.