No. 45,855

L. O. Stark and Lena Alice Stark, *Appellants,* v. Clarence T. Stanhope and Alena P. Stanhope, his wife; The Board of Directors of School District No. 103 of Chautauqua County, Kansas, and its successor, Chautauqua County Community Unified School District No. 286; C. F. Fields, Chairman of the Board of Trustees of the First Nazarine Church of Chautauqua, Kansas; The First Nazarine Church of Chautauqua, Kansas; C. F. Fields; The Board of Trustees of Cemetery District No. 10 of Chautauqua County, Kansas, and Louis Duncan, Claude Fuller, Cardin F. Rutledge, R. F. Rutledge, and James Sweeney, Members of the Cemetery Board for said Cemetery District No. 10; C. E. Chamberlin and Effie Chamberlin, husband and wife; Gilford Branch; et al., *Appellees.*

(480 P. 2d 72)

Opinion filed January 23, 1971.

*R. O. Robbins* and *Gary House,* of Robbins and House, of Sedan, were on the brief for appellants.

No appearance by appellees.

The opinion of the court was delivered by

Fatzer, J.: The plaintiffs commenced this action to quiet title to real estate described in their petition, and referred to throughout this litigation as Tracts 1 and 2. They alleged that they, together with their predecessors in title, had been in "actual, peaceable,

open and adverse possession" of the real estate for more than fifteen years last past. The defendant Cemetery District No. 10 of Chautauqua County filed an answer and cross petition in which it sought to quiet its title to Tracts 1 and 2, and Tract 3, hereafter referred to. Trial resulted in a judgment quieting the plaintiffs' title to Tract 1, and quieting the defendant District's title to Tracts 2 and 3, and the plaintiffs appeal.

On July 16, 1883, a rectangular tract of land described as commencing at the southeast corner of the northeast quarter of the southeast quarter of Section 8, Township 35, Range 11 East, thence north 396 feet (24 rods), thence west 825 feet (50 rods), thence south 396 feet (24 rods), thence east 825 feet (50 rods), to the place of beginning, and containing seven acres more or less, was deeded by the then owner to the Board of Directors of School District No. 103, Chautauqua County, for "school and seminary purposes." The west 278 feet (16.85 rods) of the seven acre tract was used as a graveyard, and the tract, herein referred to as Tract 3, has been continuously, and still is, used as a cemetery, being operated by the defendant Cemetery District No. 10 of Chautauqua County, which district was created in July, 1944. The plaintiffs have made no claim of title to Tract 3, and it is not involved in this appeal. The remainder of the seven-acre tract, the land here involved—the east 547 feet (33.15 rods)—comprises the area designated on the plaintiffs' Exhibit 2 as Tract 1 and Tract 2, the title of which was sought to be quieted in the plaintiffs.

The record does not show what use was made of the east 547 feet (33.15 rods) of the seven-acre tract between 1883 and 1949. However, in December of 1949, School District No. 103 of Chautauqua County was disorganized in accordance with the law of this state, and on December 13, 1949, Tract 1 was deeded by the county superintendent to one M. W. Reynolds. Mr. Reynolds deeded Tract 1 to the First Nazarene Church of Chautauqua, and on January 21, 1950, C. W. Fields, chairman of the Board of Trustees of the First Nazarene Church, deeded the property to the plaintiffs by general warranty deed.

Tract 2 is the larger of Tracts 1 and 2, and adjoins Tract 1 on the south and a small portion adjoins on the east. Tract 2 also adjoins the east boundary line of Tract 3. There is a roadway to the cemetery on Tract 2, located between Tracts 1 and 2, which

has been used by the public for approximately 30 to 40 years. Some fourteen years ago, the public parked automobiles on Tract 2, but has not since used the tract for parking, for reasons hereafter detailed.

The defendant's answer and cross petition alleged the only color of title the plaintiffs had was to the two acres deeded to them in 1950, comprising Tract 1, and alleged that the plaintiffs never paid ad valorem taxes on any of the lands involved other than on Tract 1. It further alleged the plaintiffs had never made a claim to any part of the seven-acre tract other than Tract 1, and that the Cemetery District maintained the fences and roads and mowed the land and has continuously occupied the seven-acre tract, except for the two acres the plaintiffs have used since 1954. The cross petition sought affirmative relief to quiet the Cemetery District's title to Tract 2, and alleged the plaintiffs could not have adverse possession against an unabandoned public use—the roadway on Tract 2—and that the plaintiffs were tenants at sufferance, and their claim was a cloud upon the Cemetery District's title to Tract 2.

At the trial, both parties presented evidence. Plaintiff Stark testified he and his wife purchased Tract 1 from C. F. Fields in 1950, and he believed he was also purchasing Tract 2 since both tracts were fenced together and were separated from Tract 3 by a fence. The plaintiffs entered into possession of Tracts 1 and 2 in 1950, and began clearing them of brush and removed approximately 40 black jack and scrub oak trees. No one had kept up Tract 2. He moved his house onto the property in 1953, made other improvements, and planted approximately 96 trees in 1950, 1951 and 1952—many of them on Tract 2. He had the hay cut off both tracts every year since 1952. The Cemetery District never asked for an accounting of the hay, or its proceeds, harvested over a period of fifteen years, and the plaintiffs have been in possession of the property since 1950, having actually resided thereon since 1953.

Joe Y. Allen testified for the plaintiffs that he was familiar with the property in question, since he lived just south of them, and he remembered when they first moved their house onto the property in 1953; that the plaintiffs built a hen house, cleared Tract 2, mowed the hay, and kept the brush down. When the plaintiffs acquired the property, it was covered with black jack trees but

they had them taken off. Allen testified he had mowed the hay for the plaintiffs since they had resided there except for the first year, and had given them a share of the hay for harvesting the crop; that most of the hay was taken off Tract 2 and he had harvested hay on the property since 1952 or 1953, after the tracts were cleared by the plaintiffs, and that the Cemetery District had never asked him to give it a share of the hay taken off Tract 2.

Orb Sears was a witness for the Cemetery District and testified that the roadway leading to the cemetery has been in its present location for 30 or 40 years; that he used to park outside the cemetery south of the road on Tract 2, but since the plaintiffs moved in, planted trees, and put up a fence, plaintiff Stark told him no one was allowed to park on the tract, so he drove on into the cemetery and parked.

Ray Tresner was a witness for the Cemetery District and testified that he asked the plaintiff Stark to take down the fence located south of the roadway leading into the cemetery, which Stark had put up, but Stark refused to do so. Tresner testified the fence had been up for ten or twelve years.

The Cemetery District produced no evidence to support a claim to Tract 2 except concerning the use of the roadway located thereon.

As indicated, trial resulted in a judgment quieting the plaintiffs' title to Tract 1 on the grounds they had color of title to, and were the owners of, and had for more than fifteen years last past been in open, exclusive and continuous possession of said real property, and that the Cemetery District had no right, title or interest therein. With respect to Tract 2, the district court found the Cemetery District was the owner of the property, and for more than fifteen years last past had been in open, exclusive and continuous possession of the same, and that the plaintiffs had no right, title or interest therein, and were not in possession thereof, and that the Cemetery District was entitled to have its title quieted to Tract 2 as against the plaintiffs. The court further found the plaintiffs failed to establish ownership by adverse possession to Tract 2 and failed to prove by the evidence they had been in open, exclusive and continuous possession of the real property, and that the title to Tract 2 should be placed in Cemetery District No. 10, Chautauqua County.

The plaintiffs filed a motion for a new trial and, among other things, alleged,

"[t]hat the judgment concerning Tract 2 is contrary to the evidence as the only manner in which defendant Cemetery District No. 10 used said Tract 2 was by using a certain roadway passing through said Tract 2, as access to a cemetery which was located west of Tract 2, whereas plaintiffs have been in the open, exclusive and continuous possession of all of Tract 2 for more than fifteen years before the filing of their petition in this action, except for the limited use of the said roadway by said defendant."

On October 11, 1968, the plaintiffs' motion for a new trial was heard and overruled, and they perfected this appeal from the judgment concerning Tract 2.

The appellants contend the judgment denying them relief was contrary to the undisputed evidence and to the law applicable thereto. Consideration of the contention requires an examination of K. S. A. 60-503, and the evidence as presented in the record on appeal.

The statute (K. S. A. 60-503) provides:

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

The section became effective January 1, 1964, and amended G. S. 1949 60-304, *Fourth*. Formerly, the elements of the possession were required to be "notorious" and "hostile," but the new section eliminated the element of hostility as essential of adverse possession and changed the common-law conception of the doctrine. It is still necessary, however, to succeed on a claim of title by adverse possession, that the possession shall have been "open, exclusive and continuous" for the statutory period. In lieu of an adverse or hostile holding, the claim may be based on, as the appellant testified, "a belief of ownership." In his commentary on Kansas Code of Civil Procedure, Judge Gard states the belief of owner concept may present some difficulties as it makes the belief of the possessory claimant, a relevant matter; that belief is a state of mind, whereas hostile holding involves an intent, and belief is distinct from intent; that they are not synonymous, and unless the claimant has made statements to someone evidencing a contrary mental attitude, it is difficult to challenge effectively the testimony of a person as to his belief. (Gard, Kansas Code of Civil Procedure, Annotated, § 60-503, p. 522.)

In a Vernon's Kansas Statutes Annotated, Code of Civil Procedure

(Fowks, Harvey, Thomas) it is stated that Professor Melvin C. Poland wrote the authors' comments concerning Section 60-503, pp. 6 and 7. In his commentary, Professor Poland refers to the Advisory Committee's notes where it stated that this section "changes the common law principles of adverse possession as pronounced by the Kansas Supreme Court." He further states:

"In the language of the statute 'belief of ownership' has been substituted for the common law element of 'hostile' holding. It may be assumed the change will make it more difficult to challenge the character of the holding, belief being a state of mind whereas hostile holding involves an intent, normally evidenced by overt acts or statements in respect to such holding. While it may be argued that legislation should not be designated to make acquisition, by a possible criminal act, of ownership of property easier to obtain, it must be admitted that the two-fold policy behind statutes of limitation (the curtailment of stale claims, and the rewarding of the individual who has made beneficial and productive use of the land over a long period of time) will be accomplished more often under the new concept of 'belief of ownership' established by the statute.

"Belief of ownership as a substitute for 'hostile' holding is not without limitation. In cases where there has been an admission or recognition of doubt or uncertainty as to the true boundary line the requisite 'belief of ownership' does not exist under the statute. *Further, it must be recognized that in cases where possession has been 'under a claim knowingly adverse' hostility remains an essential element. . .*" (p. 7.) (Emphasis supplied.)

As indicated, the appellants alleged that they and their predecessors in title had been in "actual, peaceful, open and adverse possession" of the tract in question for more than fifteen years last past. While there was evidence that when Stark purchased Tract 1 he also believed he was purchasing Tract 2 since both tracts were fenced together, in view of the findings of the district court with respect to Tract 2, we think this case must be decided upon the basis that the appellants' claim to the property was "knowingly adverse" and that "hostile" possession by them, rather than "belief of ownership," is the essential element to the acquisition of ownership by adverse possession.

Upon the question of adverse possession, the only evidence produced was that offered by the appellants. We were not favored with a brief of the appellee Cemetery District, or its counter designation of evidence, if any there was, which might tend to support the district court's finding quieting its title to Tract 2. As noted, the appellants state the Cemetery District produced no evidence to support a claim to Tract 2 other than the existence of the roadway used by the public for ingress and egress to the cemetery.

The evidence was uncontradicted and showed the appellants purchased Tract 1 from the Nazarine Church in 1950, and obtained the title thereto by warranty deed; that when they purchased Tract 1 they also believed they were purchasing Tract 2 because both tracts were fenced together and were separated from the cemetery by a fence. They entered into possession and started clearing the property of brush, and cut down some 40 black jack and scrub oak trees. There was no pretense of possession of Tract 2 by anyone, and no one was keeping up that part of the property. After the property was cleared, they planted about 96 trees, many on Tract 2, and appellant Stark employed his neighbor to mow the property and cut and put up the hay on a share basis, most of which was on Tract 2, each year of their occupancy. The Cemetery District never asked the appellants or the neighbor for an accounting of the hay harvested from Tract 2 for a period of more than fifteen years. In 1953, the appellants moved their house onto the property, which was a permanent structure and visible evidence of occupancy, and it is where they have since resided. (It is not clear from the district court's findings whether the house was located partly on both tracts, or entirely on Tract 1.) In addition, the appellants built a hen house and made other improvements. For a time after the appellants moved onto the property, the Cemetery District and the appellants had disagreements concerning the use of the roadway and parking along the south side thereof. As a result, and to prevent parking on Tract 2, the appellants erected a fence on the south side of the roadway some ten or twelve years ago. However, prior to the erection of the fence, people parked their automobiles outside the cemetery south of the roadway, but after appellant told them no one was allowed to park there, they drove into the cemetery to park. At one time after the fence was built, a resident of the Cemetery District attempted to have it taken down, but appellants told him to leave it alone as no one was allowed to park there, and the Cemetery District acquiesced in the appellants' demand.

The evidence was uncontroverted and showed the appellants' actual possession was open and continuous and was such as to indicate their exclusive control of Tract 2, except for the use of the roadway. There was no pretense of possession of the tract by anyone other than the appellants. It was subjected to their will and dominion manifesed by their clearing and improving

the property, and the use which they made of it was that to which it was adapted. The improvements which they placed thereon and their refusal to permit the appellee to use Tract 2 in any manner, proclaimed to all they were exercising their rights of ownership over the property inconsistent with the rights of anyone else. (*Chellis v. Coble*, 37 Kan. 558, 15 Pac. 505; *Anderson v. Burnham*, 52 Kan. 454, 34 Pac. 1056; *Dickinson v. Bales, et al.*, 62 Kan. 865, 61 Pac. 403.) Their occupancy and use were continuous from year to year, and they cannot be regarded as occasional trespassers, nor can their possession be regarded as hidden or intermittent. For more than fifteen years their possession was maintained without interference by anyone except for the use of the roadway, and it was not until February 1968, that the Cemetery District challenged the rightfulness of their claim and possession.

While it is true the appellants had no paper title to Tract 2, such a requirement is not essential to adverse possession, nor to the acquirement of title by virtue of the statute of limitations. In *Anderson v. Burnham*, supra, it was held:

"Possession of land by an adverse occupant for more than 15 years, which is actual, notorious, continuous, and exclusive, will give title thereto, although such possession is entirely destitute of color of title." (Syl. ¶ 1.)

See *Casner v. Common School District No. 7*, 175 Kan. 551, 265 P. 2d 1027; *Kansas Power & Light Co. v. Waters*, 176 Kan. 660, 272 P. 2d 1100; *Truck-Trailer Supply Co., Inc. v. Farmer*, 181 Kan. 396, 311 P. 2d 1004; *Walton v. Unified School District*, 203 Kan. 415 454 P. 2d 469.

Did the use of the roadway by the appellee prevent the appellants from having exclusive possession of Tract 2? This is the controlling legal question in the case. If such use of the roadway prevented the appellants from having "exclusive" possession of the tract, then the district court did not err in finding the appellants failed to establish ownership.

The question of law presented does not appear to have been decided by this court. Counsel for the appellants cite no Kansas case dealing with the question, and our research fails to disclose a controlling precedent. The point has been decided in other jurisdictions, and the rule is stated in 3 Am. Jr. 2d, Adverse Possession, Sec. 53, p. 143, as follows:

"As a general rule, any use of premises by the public which indicates a claim of common or public right will prevent the acquisition of title by ad-

verse possession of the premises by any person; in such a case, the possession is not exclusive. The rule is held not to apply, however, where the use and occupation by the claimant and the public are not common uses. The permissive use of land by the public does not affect the acquisition of title by adverse possession, since such a use acknowledges the possession of the person holding the land, and is subordinate thereto. *The same is true of casual use by the public.*" (Emphasis supplied.)

There is also discussion of this question in 2 A. L. R. 1370, where authorities are cited supporting the same rule. See *Webber v. Clarke*, 74 Cal. 11, 15 Pac. 431; *Burrows v. Gallup*, 32 Conn. 493, 87 Am. Dec. 186; *Woodruff v. Langford* (Iowa), 115 N. W. 1020; *Dodge v. Lavin et al.*, 34 R. I. 514, 84 A. 857; *Bensdorff v. Uihlein*, 132 Tenn. 193, 177 S. W. 481, 2 A. L. R. 1364; *Walner v. City of Turlock*, 230 C. A. 2d 399, 41 Ca. R. 29.

In *Webber v. Clarke*, supra, it was held that the fact the public had a right of way for bringing cattle over the defendant's land did not destroy his exclusive possession of the land, and was not inconsistent with his claim of adverse possession. The Supreme Court of California held that the defendant acquired title to the land by adverse possession by grazing his cattle over it for the statutory period.

In *Dodge v. Lavin et al.*, supra, it was held that the use of a part of the land as a thoroughfare by the public did not affect the possession of a person holding the land by adverse possession. It was claimed the possession was not exclusive, because of the passing and repassing over the property of persons by the implied permission of the owner. It was held this did not prevent the possession from being exclusive as to the public which came on the land.

In the instant case, the appellants and the public used Tract 2 in an altogether different manner—there was nothing in common between the two uses. The appellants' use of the land for hay was the ordinary use to that of other land similarly located. The public's use of the roadway was casual and infrequent, but the appellants' use of the property was continuous and exclusive for its primary purpose. No other person used the tract for the same purposes the appellants used it, and no other person put it to the use to which it was best adapted. We are of the opinion the infrequent passing of the public on the roadway amounted to nothing more than mere casual entries on the land made without any intention of asserting a right of entry and possession, and was not

sufficient to break the continuity of the appellants' exclusive possession and use of the remainder of the tract. There was no basis upon which the district court could conclude the Cemetery District was the owner of Tract 2. The appellants' possession had ripened into a title.

Before concluding this opinion, we refer to the Cemetery Districts's allegation the appellants had not paid taxes on Tract 2. In the first place, we have no statute requiring the payment of taxes as an element of adverse possession. In the second place, the appellee Cemetery District presented no evidence to support a claim to Tract 2 except the use of the roadway, and we must assume it presented no evidence on the payment of taxes—allegations of fact are one thing, and evidence to support such allegations is another. Moreover, there was no showing the property was ever assessed for taxation, it having originally been deeded to the school district in 1883, and the school district has since been disorganized. Furthermore, it has been held that the payment of taxes is not a condition to the acquisition of title by adverse possession unless made so by statute. (*Finn v. Alexander,* 102 Kan. 607, 171 Pac. 602; 2 C. J. S., Adverse Possession, § 171a, p. 745.)

Likewise, the allegation in the Cemetery District's answer that the appellants had mortgaged Tract 1 to the Sedan State Bank is not persuasive evidence they were not claiming Tract 2 by adverse possession. A lending institution prescribes the conditions upon which loans and mortgages are made, and the fact a bank did not loan money upon lands to which the appellants had not perfected record title, is not persuasive evidence of lack of adverse possession. Moreover, it is entirely possible the appellants needed only to incumber Tract 1 as security for a loan.

As the evidence is not disputed, we conclude it established as a matter of law the appellants' title to Tract 2 by their clear, positive and continuous possession of Tract 1 and Tract 2 for more than fifteen years. The district court erred in concluding the appellants failed to establish a title to Tract 2, and that judgment is reversed, and the cause remanded with directions to enter judgment in favor of the appellants confirming their ownership to Tract 2, subject to the public's easement to use of the roadway for ingress and egress to the cemetery.

It is so ordered.