NOT DESIGNATED FOR PUBLICATION

No. 121,650

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN E. and TARA L. MYERS,
*Appellants*,

v.

WILLIAM E. and JENNIFER M. LOECHLER,
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed July 17, 2020.
Affirmed.

*Kelly J. Trussell*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for
appellants.

*Beverly M. Weber*, of Martin Leigh PC, of Kansas City, Missouri, for appellees.

Before GARDNER, P.J., BUSER, J., and BURGESS, S.J.

BUSER, J.:  This is an appeal brought by Steven E. and Tara L. Myers who filed a
quiet title action against William E. and Jennifer M. Loechler. The Myers sought to quiet
title to a prescriptive easement based on their claim of the right to continued use of a
pond dam pathway. The district court granted judgment in favor of the Loechlers, ruling
that the Myers had failed to prove the nonpermissive use and exclusivity elements
necessary to establish this adverse possession claim. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2018, the Myers brought a quiet title action against the Loechlers seeking to quiet title to a prescriptive easement based on their claim of the right to continued use of a pond dam pathway located on the Loechlers' property. This lawsuit was brought by invoking an adverse possession cause of action under K.S.A. 60-503.

The Myers acquired two adjoining parcels of land from Steven's father in 1976—an 80-acre tract and a 60-acre tract along 219 Road in Leavenworth County. The Myers access their parcels of land through a roadway that has a county road easement that runs to the parcels. In 1981, the Myers' neighbor who owned the property that the Loechlers now own, Vince Angell, built a pond dam pathway over a portion of the county road easement and had an agreement with the Myers to allow them to use the pathway to access their parcels. Portions of the county road easement and the pond dam pathway overlap.

The Myers have used the pond dam pathway since 1981 when they entered into the agreement with Angell. They have provided all the maintenance for the pathway over the years, but they do not pay taxes on it. When the Loechlers purchased the property from Angell in 2002, Angell told them about the agreement between him and the Myers. In 2017 the Loechlers began to restrict the Myers' access to the pond dam pathway. According to the Loechlers, they ultimately revoked the Myers' permission to use the pathway because the Myers were cutting down some trees along the pathway. Until then, both the Myers and the Loechlers had used the pathway to access their respective properties.

The district court held a bench trial. At the conclusion, the district court granted judgment in favor of the Loechlers ruling that the Myers failed to sustain their burden of

2

proof on the nonpermissive use and exclusivity elements of an adverse possession cause of action. The Myers appeal.

ANALYSIS

On appeal, the Myers state that

"the analysis of the plaintiffs' adverse possession claim is focused upon whether they can satisfy the elements that their easement usage is (1) exclusive and (2) either knowingly adverse, or under a belief of ownership. The plaintiffs believe that the evidence presented at trial meets both of those elements, when considered under the current legal standards of K.S.A. 60-503."

In response, the Loechlers claim that the district court did not arbitrarily disregard undisputed evidence or exhibit bias, passion, or prejudice in assessing the evidence and concluding that the Myers had failed to prove the elements of exclusivity, nonpermissive use, or a belief in ownership.

As a preliminary matter, the parties posit different standards of review. In their opening brief, the Myers assert the proper standard was set forth in *Renensland v. Ellenberger*, 1 Kan. App. 2d 659, 574 P.2d 217 (1977). In that early Kansas Court of Appeals case it was stated: "Whether or not a possessor acquires title by adverse possession is a question of fact, and the resolution of such a factual question is binding on appeal if based on substantial competent evidence." 1 Kan. App. 2d at 662. On the other hand, the Loechlers claim that on appeal our court should analyze the district court's ruling under a negative factual finding standard. See *Cresto v. Cresto*, 302 Kan. 820, 821, 358 P.3d 831 (2015) (defining negative factual finding standard).

Although the Myers filed a reply brief, they do not challenge the negative factual finding standard urged by the Loechlers. Instead, the Myers shift the standard of review

and their claim of error from a factual determination to a purely legal one. In reply, they state: "The plaintiffs contend the trial court's legal conclusions were erroneous and not supported by current case law." This, of course, necessitates a de novo review on our part. See *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017) (The appellate court has unlimited review of conclusions of law.).

In analyzing this appeal, we will apply the standard of review that our court used in another adverse possession case, *MFA Enterprises, Inc. v. Delange*, 50 Kan. App. 2d 1049, 336 P.3d 891 (2014). In that case, we stated:

> "Ultimately, whether a party has acquired land by adverse possession is a question of fact, and the party asserting title must establish each element by clear and convincing evidence. See *Wright v. Sourk*, 45 Kan. App. 2d 860, 866, 258 P.3d 981 (2011). Here, after considering the evidence presented at the bench trial, the district court concluded that [the plaintiff] had failed to meet his burden of proof. A finding that a party did not satisfy its burden of proof is a negative factual finding.
> 
> ". . . In addition, when one seeks to obtain title to real property by adverse possession, there is a presumption in favor of the party holding legal title against the claimant so that mere possibilities do not deprive the legal owner of the property. See *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980). Absent proof that the district court disregarded undisputed evidence or based its decision on an improper consideration, we will not disturb a holding that a party failed to satisfy its evidentiary burden. [Citations omitted.]" *Delange*, 50 Kan. App. 2d at 1055-56.

See also *Crone v. Nuss*, 46 Kan. App. 2d 436, 263 P.3d 809 (2011) (using negative factual finding standard in adverse possession case).

As noted earlier, where necessary, we will evaluate the district court's legal conclusions de novo. See *Gannon*, 305 Kan. at 881.

The Myers' claim is one of adverse possession over a prescriptive easement. Although the two concepts are similar, adverse possession is based on a claim of ownership and a prescriptive easement is based on a claim of the right to continued use of the realty. *Dameron v. Kelsay*, No. 96,462, 2007 WL 2580598, at \*4 (Kan. App. 2007) (unpublished opinion). Despite this distinction, "[a] prescriptive easement can be acquired by long continued use analogous to acquiring title by possession. To acquire a prescriptive easement, the use must be substantially such as would give title by adverse possession." 2007 WL 2580598, at \*4. In other words, a claimant must prove the same elements under either doctrine. *Stramel v. Bishop*, 28 Kan. App. 2d 262, 264, 15 P.3d 368 (2000).

K.S.A. 60-503 provides:

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

At the outset, the district court ruled that the Myers had proven by clear and convincing evidence that the Loechlers had knowledge of the Myers' use of the pathway. It was also undisputed that the Myers used the pathway for more than 15 years. The crux of this appeal, therefore, focuses on whether, as the district court ruled, the Myers failed to sustain their burden of proof regarding the elements of belief of ownership and exclusivity. We will consider the two elements separately.

*Belief of Ownership in the Right to Use the Pathway*

The Myers brought their claim under a belief in ownership theory. In other words, they assert a good faith belief that they owned the right to use the pond dam pathway.

5

Past courts have acknowledged that the belief in ownership theory has made adverse possession claims more difficult to prove: "It is very difficult to distinguish between a *permissive use*, which does not become an easement, no matter how long it continues, and a '*belief of ownership*' which would support a prescriptive use." (Emphases added.) *Allingham v. Nelson*, 6 Kan. App. 2d 294, 300, 627 P.2d 1179 (1981).

Two aspects of the belief in ownership theory deserve mention. First, "'belief of ownership' under K.S.A. 60-503 [is] a state of mind which must be based on good faith under circumstances which justify such belief.' Further, the good faith belief in ownership must be reasonable." *Akers v. Allaire*, 17 Kan. App. 2d 556, 558, 840 P.2d 547 (1992). Second, one's belief in ownership must be innocently or mistakenly adverse. In *S. Star Cent. Gas Pipeline, Inc. v. Greuel*, No. 08-2115-KHV, 2009 WL 1208065, at *7 (D. Kan. 2009) (unpublished opinion), the court noted that "[K.S.A.] 60-503 requires that the party seeking a prescriptive easement demonstrate a belief of ownership in the easement which is *innocently or mistakenly adverse* to the owner of the property ('good faith belief of ownership')." (Emphasis added.)

The Myers contend they "crossed the [Loechlers'] pond dam under a good faith belief that they owned a right to an easement to access their own parcels through the [Loechlers'] property." The Myers believed this easement ownership originated with the 1981 agreement with Angell and the Myers. According to the Myers, they demonstrated their ownership of the easement by maintaining the pathway along the pond dam for nearly 40 years. Additionally, "because the [Myers] held a good faith belief in their ownership of an easement across the pond dam pathway . . . they never sought permission from the [Loechlers] to continue to use it after the [Loechlers] purchased the property in 2002."

The Loechlers counter that the trial evidence contradicts Myers' claim that they had a good faith belief in owning the right to use the pathway. First, the Myers knew their

6

use of the pathway was initially based on a permissive agreement with Angell and Steven Myers' father. Second, Jennifer testified to at least one conversation where the Loechlers gave the Myers permission to use the pathway, and other occasions when the Loechlers threatened to revoke their permission for the Myers to use the pathway. Finally, the Loechlers point to the Myers' claim in 2017 that the pond dam road was "an unmaintained road belonging to Leavenworth County, Kansas" which the Loechlers argue is inconsistent with a good faith ownership belief in their easement.

Evidence about the Myers' use of the pathway—whether permissive or not permissive—was a critical issue at trial because it was relevant to whether the Myers had a good faith belief that they owned the right to use the pathway.

Kansas law is clear that "[i]n the absence of adverse use, there can be no road by prescription." *Roberg v. Bd. of Cty. Comm'rs of Ottawa Cty.*, No. 92,162, 2005 WL 43426, at *2 (Kan. App. 2005) (unpublished opinion). As a result, ownership rights to a prescriptive easement cannot be established when there is a permissive use. If the Loechlers gave permission to the Myers to use the pathway, such use would be inconsistent with the Myers having a good faith belief that they owned the right to use the pathway.

In a colloquy with the district court during trial, Myers' counsel agreed that an element of their cause of action was that the Loechlers did not give the Myers permission to use the pathway:

> "THE COURT:  Okay. And one of the elements that you will need to prove would be . . . that this was not a permissive use.
> "MS. TRUSSELL:  That's correct.
> "THE COURT:  Okay. And—
> "MS. TRUSSELL:  And that the landowner had knowledge.

7

"THE COURT: And that the basis upon which you believe you've proven the nonpermissive nature of this adverse possession is that you asked each of the plaintiffs whether the defendants gave them permission for access.

"MS. TRUSSELL: That's correct.

"THE COURT: And they said, no, they did not.

"MS. TRUSSELL: That's correct."

In ruling in favor of the Loechlers at the conclusion of trial, the district court found:

"Second element is that the usage made by the [Myers] has been without the permission. It's a nonpermissive use, in other words, . . . by the [Myers] of the [Loechlers'] property. And in this, the Court finds that the evidence has failed to meet the requirement of clear and convincing evidence of nonpermissive use.

. . . .

"The evidence does show . . . that the [Loechlers] did express permission by implication at least, by consenting to the use and at time to time putting parameters around the permissive boundaries of use, that [the Loechlers] objected to use in excess of this permission granted."

Did the district court err in concluding that the Myers did not prove by clear and convincing evidence a good faith belief that they owned the right to use the pathway? In order to address this question, we must review the evidence presented by both parties regarding whether the Loechlers had given the Myers permission to use the pathway.

In support of the Myers' good faith belief in ownership theory, Steven and Tara testified the Loechlers had never given them permission to use the pond dam pathway. Moreover, Steven denied ever having a conversation with the Loechlers about the subject matter. For her part, Jennifer acknowledged that she did not give the Myers written permission.

8

But the record is replete with testimony tending to show that the Myers' use of the pathway was permissive rather than nonpermissive. While Jennifer could not recall the exact date when the Loechlers gave the Myers permission to use the pathway, she testified to a conversation that occurred in 2002 upon meeting with Steven, wherein "we talked to him about the—the fact that Vince had told us that he had given him permission to use [the pathway] and, you know, it was okay with us. . . . The permission was okay." When Jennifer was asked whether Steven ever requested permission to use the roadway, she responded, "I can't say that he ever asked for permission. We had already given permission for him to."

Jennifer also testified to incidents when the metal gate on the pathway was left open. According to her, "there were several times over the years where we told [Steven], you know, the gate needs to be closed, we're going to take away permission for you to use that area." According to Jennifer, Steven responded, "I'll close the gate. I'll do this and I'll do that and it'll be okay." Lastly, when asked if she cancelled her permission for Steven to traverse across the Loechlers' property, Jennifer answered, "Yes." According to her, this was because Steven had been cutting down trees along the pathway—which was the genesis of this litigation.

Jennifer's testimony was a central point of contention on the issue of nonpermissive use. During trial, the district judge challenged the Myers' assertion that there was no evidence that the Loechlers gave the Myers permission to use the pathway:

> "THE COURT:  [Y]ou keep saying that there's no evidence of any permission.
> "MS. TRUSSELL:  Right.
> "THE COURT:  "In order for me to reach that conclusion I would have to assign no weight and credit to the testimony directly of the defendant Jennifer Loechler that permission was, in fact, given."

We should note that an appellate court does not reweigh the evidence or pass on the credibility of witnesses. *Crone*, 46 Kan. App. 2d at 443.

There was also evidence that, contrary to the Myers' belief in owning the easement to the pathway, the Myers believed the pathway was owned by the county and was part of the county road easement. Steven testified, "Somebody at the courthouse told me that the easement ran all the way out to the road." Steven also testified that it was the county employees who told him that it was up to him to maintain the pathway. Later, in a police report, Steven stated that the pathway was "'an unmaintained road belonging to Leavenworth County, Kansas.'" In this instance, if the Myers thought the county had an easement for the entire road—including that portion which included the pond dam pathway—such a belief is inconsistent with the contention that the Myers had a good faith belief they had an ownership right to use the pathway.

In addition to the Myers asserting that the trial evidence proved their use of the pathway was nonpermissive, the Myers also complain that "the trial court erred when it relied exclusively on *Fiest v. Steere*[, 175 Kan. 1, 259 P.2d 140 (1953)] to support its conclusion of law that the plaintiffs could not satisfy the legal elements of adverse possession." The Myers note that at the time of the *Fiest* decision, the statute did not yet contemplate a belief of ownership theory—it only contemplated a claim brought under the knowingly adverse theory. As a result, the Myers assert the district court erred in applying outdated law.

We are persuaded that the Myers' claim of legal error is without merit. First, although the Myers take issue with the district court's application of *Fiest*, they fail to cite any caselaw that contradicts *Fiest*, even after K.S.A. 60-503 was amended to add the belief in ownership theory. Second, the Myers also do not present any substantive argument as to how bringing a claim under the belief in ownership theory would change the permissive use analysis detailed in *Fiest*. In fact, as detailed earlier, the Myers'

10

counsel agreed with the district court that in order to prove their good faith belief in ownership theory they must prove the use was not permissive. Third, contrary to the Myers' contention, the district court did not solely rely on *Fiest* but correctly relied on the current version of K.S.A. 60-503, which includes the belief in ownership theory, and mentioned several other appellate opinions—some of which the Myers proffered—before ruling on the case. In short, we are confident the district court correctly considered and applied the statute and caselaw pertaining to this prescriptive easement.

In summary, a prescriptive easement cannot be permissive. We hold the district court did not err in ruling that the Myers failed to prove by clear and convincing evidence—evidence sufficient to establish that the truth of the facts asserted is highly probable—that the Myers had a good faith belief in their right to use the pond dam pathway. See *In re Adoption of C.L.*, 308 Kan. 1268, 1278, 427 P.3d 951 (2018) (stating standard for clear and convincing evidence).

Moreover, employing a negative factual finding standard, the facts in the record show there was disputed testimony as to whether the Loechlers gave the Myers permission to use the pathway. There is no claim that the district court arbitrarily disregarded undisputed evidence. And the Myers do not allege, let alone prove, that the district court exhibited bias, passion, or prejudice in assessing the evidence and concluding that the Myers had failed to prove the element of nonpermissive use.

Our holding regarding the district court's legal conclusion that the Myers failed to prove their belief in ownership theory is dispositive of this appeal. For the sake of completeness, however, we next consider whether the district court erred in ruling that the Myers failed to prove by clear and convincing evidence that their use of the pathway was exclusive.

*Exclusive Possession of the Pathway*

The Myers claim error in the district court's finding that they failed to prove by clear and convincing evidence that they had exclusive possession of the use of the pathway. The Myers argue that

"the [Loechlers'] usage of their own property within the easement does not break the continuity of the plaintiffs' 'exclusive' possession of the easement. The primary purpose of the easement pathway was to provide the [Myers] with vehicle access to their parcels of land. The [Myers] *exclusively* used the pathway for that primary purpose."

As set forth in K.S.A. 60-503, the Myers were required to prove they used the pathway to the exclusion of all other persons. As to this element of the adverse possession claim the district court ruled:

"On the exclusivity, the Court would note that the evidence shows that for some period of time prior to the initiation of this action and within the 15-year limitation period that the plaintiff would need to establish for adverse possession, that the plaintiff and the defendant shared access to the area by a padlocked gate which both had access to the lock to unlock the lock. This would not be exclusive possession in the plaintiff but would at least allow possession to another.

"In addition to that, and decisively, . . . Jennifer Loechler presented unrebutted testimony that the defendants had used the roadway or the access roadway multiple times per week during the spring, summer and fall months of each year for many years. That would be a non-exclusive use of the property."

Did the district court err in concluding that the Myers did not prove by clear and convincing evidence that they exclusively used the pathway? In order to address this question a review of the evidence presented by both parties is in order.

12

At trial, Steven testified that he had seen the Loechlers use the pathway "a few times" and he had "most likely" seen Angell use the pathway, but he had never prevented Angell from using it. Tara testified that she knew "the Loechlers[] have used it from time to time." For her part, Jennifer testified that since 2002 when the Loechlers purchased the property, they used the pathway to access the northern side of their property. According to her, the Loechlers would use the pathway often—"two, three, four times a week"— during the spring, summer, and fall to access other parts of their property. Additionally, as noted by the district court, for some time after the Loechlers' purchased the property, a locked gate prevented unauthorized use of the pathway. Both the Loechlers and the Myers had a key to the lock.

In arguing that they proved the exclusive use requirement of their prescriptive easement claim, the Myers disregard the Loechlers' use of the pathway as not affecting the Myers' exclusive use of the pathway to access their own property. The Myers cite *Stark v. Stanhope*, 206 Kan. 428, 436-37, 480 P.2d 72 (1971), in support of this notion.

In *Stark*, the plaintiffs brought a quiet title action based on adverse possession. Pertinent to this appeal, the plaintiffs in *Stark* were using a whole tract of land (Tract 2) owned by a cemetery district to grow hay, but the public used a roadway located on the property occasionally and casually. The cemetery defended against the adverse possession claim of Tract 2 by arguing that the plaintiffs could not obtain adverse possession against an unabandoned public use—the roadway on part of the disputed tract.

Our Supreme Court found uncontroverted evidence that the plaintiffs entered into possession of Tract 2, began cutting down 40 trees, and clearing the property of brush. The Supreme Court noted:  "There was no pretense of possession of Tract 2 by anyone, and no one was keeping up that part of the property." 206 Kan. at 434. After Tract 2 was cleared, the plaintiffs planted numerous trees, mowed the property, and cut hay every year. For 15 years the Cemetery District never sought an accounting for hay that was

13

harvested. The plaintiffs built a hen house and made other improvements. Occasionally, disagreements arose between the plaintiffs and the cemetery district regarding the use of the roadway and parking alongside it. These disagreements resulted in the plaintiffs erecting a fence and prohibiting parking on Tract 2, advising individuals that "no one was allowed to park there." 206 Kan. at 434.

The Supreme Court concluded that plaintiffs'

"actual possession was open and continuous and was such as to indicate their exclusive control of Tract 2, except for the use for the roadway. There was no pretense of possession of the tract by anyone other than the [plaintiffs]. It was subjected to their will and dominion manifested by their clearing and improving the property, and the use which they made of it was that to which it was adapted. The improvements which they placed thereon and their refusal to permit the [cemetery district] to use Tract 2 in any manner, proclaimed to all they were exercising their rights of ownership over the property inconsistent with the rights of anyone else. Their occupancy and use were continuous from year to year, and they cannot be regarded as occasional trespassers, nor can their possession be regarded as hidden or intermittent. For more than fifteen years their possession was maintained without interference by anyone except for the use of the roadway, and it was not until February 1968, that the Cemetery District challenged the rightfulness of their claim and possession. [Citations omitted.]" 206 Kan. at 434-35.

Given this factual background, our Supreme Court posed this question: "Did the use of the roadway by the [Cemetery District] prevent the [plaintiffs] from having exclusive possession of Tract 2?" 206 Kan. at 435. The Supreme Court concluded:

"In the instant case, the [plaintiffs] and the public used Tract 2 in an altogether different manner—there was nothing in common between the two uses. The [plaintiffs'] use of the land for hay was the ordinary use to that of other land similarly located. The public's use of the roadway was casual and infrequent, but the [plaintiffs'] use of the property was continuous and exclusive for its primary purpose. No other person used the tract for the same purposes the [plaintiffs] used it, and no other person put it to the use to

14

which it was best adapted. We are of the opinion the infrequent passing of the public on the roadway amounted to nothing more than mere casual entries on the land made without any intention of asserting a right of entry and possession, and was not sufficient to break the continuity of the [plaintiffs'] exclusive possession and use of the remainder of the tract. There was no basis upon which the district court could conclude the Cemetery District was the owner of Tract 2. The [plaintiffs'] possession had ripened into a title." 206 Kan. 436-37.

Our Supreme Court confirmed the plaintiffs' ownership of Tract 2, subject to the public's easement to use of the roadway for ingress and egress to the cemetery. 206 Kan. at 437. *Stark*'s rule of law:

"In order to acquire title to land by adverse possession as against the public's use of a roadway thereon leading to a cemetery, it is necessary only to exclude the public from possession, and mere casual entries on the land by passing on the roadway made without any intention of asserting a right of entry and possession is not sufficient to break the continuity of exclusive possession of the adverse claimant to the remainder of the tract." 206 Kan. 428, Syl. ¶ 2.

As is readily apparent, *Stark* is distinguishable both factually and as a matter of law from the case on appeal. In *Stark*, our Supreme Court was confronted with the issue of the legal effect of a public road on disputed property upon which the plaintiff exercised exclusive control. Here, no disputed tract and a public road are at issue, only a disputed private pathway used by the two contesting parties. Unlike *Stark*, where the disputed land was used to grow hay and the public roadway was occasionally used for a different purpose—to occasionally visit the cemetery—in the case on appeal, the pathway was used by the Loechlers and the Myers for the exact same purpose:  travel to access their respective private properties. In short, *Stark* does not provide legal support for the Myers' contention that the Loechlers' use of the pathway does not adversely affect the Myers' exclusive possession of the pathway easement.

15

On the other hand, Kansas cases have held that a landowners' use of the disputed property will result in a finding of non-exclusivity. In *Crone*, the Crones filed a quiet title action to land owned by Nuss and others. The Crones contended they obtained title through adverse possession. The disputed land comprised 48.5 acres of rural property which was heavily wooded.

As detailed by our court, both parties used the land for a variety of purposes. The Crones cut and baled Johnson grass, planted Sudan grass and permitted hunting. Nuss paid taxes on the disputed land and enrolled it for governmental farm programs, gave relatives and others permission to hunt on the disputed land, and drove past it three times a week but could only see the trees. He walked the property annually. Ultimately, when Nuss noticed that the Crones were planting crops on the disputed property he took action to assert his legal claim to ownership of the property.

Relevant to this appeal, the Crones argued that Nuss' contact with the disputed land was minimal. As a result, the Crones claimed they had shown their use of the disputed property was exclusive. Our court found substantial evidence in the record to support the trial court's finding that the Crones' possession was not exclusive. We stated this rule of law:

> "K.S.A. 60-503 requires that the adverse holder's possession of the property be exclusive. '[T]he requisite of exclusive possession for acquisition of title by adverse possession is not satisfied if occupancy *is shared by the owner* or with agents or tenants of the owner.' 3 Am. Jur. 2d, Adverse Possession § 71, p. 146." (Emphasis added.) *Crone*, 46 Kan. App. 2d at 446.

Returning to the case on appeal and as detailed earlier, there was substantial evidence in the record that the Loechlers, as owners of the pathway, made use of it during the 15 years in question. As a result, the Myers' use of the pathway was not exclusive. See *Koch v. Packard*, 48 Kan. App. 2d 281, 288-89, 294 P.3d 338 (2012) ("When Kansas

courts have considered the requirement of exclusivity in the adverse possession context, those courts have determined the claimant's use of the property at issue must be to the exclusion of *all other persons*."); *Dalby v. Hawkins*, No. 106,258, 2012 WL 1524376, at *4-5 (Kan. App. 2012) (unpublished opinion) ("Actually, the record shows both parties used the property in various ways relative to the type and nature of the land. . . . Accordingly, there is substantial competent evidence to support the district court's determination that the [plaintiffs'] use of the disputed land was not exclusive. This alone is sufficient to defeat the claim of adverse possession by [plaintiffs].").

We hold the district court did not err when it found the Myers failed to prove by clear and convincing evidence that they had exclusive use of the pathway during the 15 years at issue. Moreover, employing a negative factual finding standard, given the undisputed evidence that the Loechlers used the pathway to access their property, and the Myers do not allege, let alone prove, that the district court exhibited bias, passion, or prejudice in assessing the evidence, we conclude the district court appropriately found that the Myers failed to prove the element of exclusivity essential to their claim of a prescriptive easement.

Affirmed.