Argued October 10, decided October 22, 1912.

### CROWLEY v. GRANT.*

(127 Pac. 28.)

**Public Lands—Donation Lands—Title.**

1. Under the donation act (Act Cong. Sept. 27, 1850, c. 76, 9 Stat. 496), which provides that where qualified married persons have complied with the act entitling them to a grant, and either of them shall have died before issuance of a patent, the survivor

---

*The authorities on the question of the effect of a conveyance by one co-tenant to third person to found adverse possession against others are discussed in a note in 32 L. R. A. (N. S.) 702.

On the question whether possession by one tenant is adverse within rule against conveyance of land held adversely, see note in 35 L. R. A. (N. S.) 752.

For presumption of ouster of one tenant in common from long-continued undisturbed possession of another, see note in 10 L. R. A. (N. S.) 185.                                                                    REPORTER.

and the children or heirs of the decedent shall be entitled to the share or interest of the decedent in equal proportions, on death of a wife before the husband's completion of the four years' residence, required by the act, and on such completion and cultivation of the land, title to the claim settled upon by her and her husband vested in him and her heirs.

### Tenancy in Common—Adverse Possession by Co-Tenant—Evidence.

2. The presumption that entry upon land by one tenant in common is not hostile to the rights of his co-tenants is rebuttable; he being entitled to acquire prescriptive title by acts of disseisin sufficiently long continued.

### Adverse Possession—Nature of Possession.

3. The possession of one who recognizes title in another by declarations or conduct is not adverse until he has changed the character of the possession, either by express declarations or by exercising actual ownership inconsistent with a subordinate character.

### Tenancy in Common—Adverse Possession by Co-Tenant.

4. A co-tenant cannot plead limitations, unless it clearly appears that he has repudiated the title of his co-tenants, and is holding adversely to them.

### Tenancy in Common—Adverse Possession by Co-Tenant—Proof Required.

5. Evidence to show adverse possession by one co-tenant against another must be much clearer and stronger than between strangers to the title.

### Tenancy in Common—Adverse Possession—Ouster of Co-Tenant.

6. A conveyance of the whole title to a tract by one co-tenant followed by adverse possession amounts to an ouster or disseisin of the other co-tenants, and limitations will begin to run against them.

### Tenancy in Common—Adverse Possession—Ouster of Co-Tenants.

7. Where a husband and wife are tenants in comomn and on his death she conveys the entire property, such conveyance is an actual ouster of her co-tenants, the husband's heirs, such as will sustain a claim of adverse possession by the grantee.

### Tenancy in Common—Adverse Possession—Disseisin.

8. Where a surviving husband disregarded his wife's heirs' interest as tenants in common with him in land acquired under

the donation act (Act Cong. Sept. 27, 1850, c. 76, 9 Stat. 496) by making an absolute conveyance with full covenants of warranty, and his grantees recorded the deed and entered upon the land, cultivating and improving the tract, which adverse possession continued for many years, such title ripened into an absolute title in fee.

**Tenancy in Common—Laches.**

9. Tenants in common are guilty of laches in neglecting to enforce their rights, where they stand by and permit strangers to occupy, improve, and convey the land, appropriating the benefits of the land to their own use.

**Curtesy—Donation Claims—Death of Wife—Effect.**

10. Under the donation act (Act Cong. Sept. 27, 1850, c. 76, 9 Stat. 496), on death of a settler's wife before completion of the four years' residence and cultivation required by the act, the surviving husband and her heirs took the land directly as donees of the Government, and not by descent, and hence there was no estate to which the right of curtesy could attach.

From Polk:  WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit for partition by Thomas Crowley and another, against Nellie E. Grant and another. The tract of land in controversy is the north half of the donation land claim of Andrew Monroe Miller and Margaret A. Miller, his wife, described as the east half of section 31, in township 6 south, of range 4 west of the Willamette Meridian, and the northwest quarter of section 5 and the northeast quarter of section 6, in township 7 south, of range 4 west of the Willamette Meridian, in Polk County, Oregon, containing 641.23 acres. The plaintiffs allege that certain of their number are owners in fee simple of an undivided six-sevenths interest in the premises, and that the defendant Nellie E. Grant is the owner of the remaining seventh. The amended answer and cross-complaint denies the material allegations of the complaint, and alleges that the defendant Nellie E. Grant is the owner in fee simple of the premises by pre-

scription, and that the plaintiffs are guilty of laches. Mrs. Grant seeks to quiet her title to the land. The reply denies most of the allegations of the answer, and alleges that defendants are estopped from pleading title by adverse occupancy. It is admitted that plaintiffs are the heirs at law of Margaret A. Miller, deceased. It is also unquestioned that defendant Nellie E. Grant is the sole heir at law of Andrew M. Miller, deceased, his second wife having died about 14 years before, and that U. S. Grant is her husband. It appears from the evidence that in August, 1851, Andrew M. Miller and his then wife, Margaret A. Miller, nee Crowley, through whom plaintiffs claim, settled on the section above described, under the provisions of the act of Congress approved September 27, 1850, known as the "Donation Law"; that they continued to reside thereon as husband and wife until the death of Margaret A. Miller February 8, 1852; that Mrs. Miller died intestate, without issue; that about the year 1853 Mr. Miller married a second wife, who by him became the mother of the defendant Mrs. Grant; that he continued to reside upon and cultivate the land as required by law for more than four years, and on August 28, 1857, submitted final proof in compliance with the donation law; that on December 29, 1866, patent was issued to Andrew M. Miller and the heirs at law of his late wife, Margaret A. Miller, the north half of the tract being granted to the heirs of Margaret A. Miller, deceased; that the patent was recorded in Polk County, Oregon, February 21, 1874. After the death of Margaret A. Miller, Mr. Miller retained the entire and undisputed control and possession of the whole claim, resided thereon, and cultivated and improved a considerable portion of the land; his house being situated on the south half of the claim. This control and possession was so continued by him, either in person or through his tenants, until his death, January 17, 1909, he having leased the

land or a portion of it for several years. His possession of the claim was with this exception: That on February 15, 1875, he conveyed to James W. Edgar, by warranty deed, 160 acres of the land in controversy, namely, the northeast quarter of section 31, in township 6 south, of range 4 west, of the Willamette Meridian. Edgar took possession of the land, built a house thereon, and cultivated several acres. He resided on the property until October 6, 1877, when he sold and conveyed the same by warranty deed to David Maxfield, who took possession, built another house on the tract, cultivated and improved the same, and resided thereon until November 27, 1882, on which date he sold and conveyed the section to Mr. Miller. The property was inclosed with fences early in the '60's. These fences have been maintained ever since. About 200 acres of the north half of the claim in controversy has been farmed and cultivated for about 30 years, and the remainder has been used for pasture. Mr. Miller paid the taxes on the property, and received and retained all the rents and profits accruing from the premises, claiming all the land as his own, there being no demand made upon him by any of the heirs of Margaret A. Miller, deceased, for any share therein. This suit was commenced July 23, 1909, to partition that portion of the donation land claim patented to the heirs at law of Margaret A. Miller, deceased.

REVERSED: DECREE RENDERED.

For appellants there was a brief and an oral argument by *Mr. Oscar Hayter.*

For respondents there was a brief and an oral argument by *Mr. Lauflin M. Curl.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Under the act of Congress approved September 27, 1850 (Act Sept. 27, 1850, c. 76, 9 Stat. 496), commonly known as the "Donation Act," in all cases where qualified

married persons have complied with the provisions of the act so as to entitle them to the grant provided for therein, and either of them shall have died before patent issues, the survivor and children, or heirs of the deceased, shall be entitled to the share or interest of the deceased in equal proportions. Therefore, upon the completion of Mr. Miller's four years' residence, and cultivation of the land, title to the north half of the claim vested in Mr. Miller and the heirs of his deceased wife, Margaret A. Miller. Under the provisions of the act Miller's occupancy of the north half of the claim was that of a co-tenant at the date of the issuance of the patent. The defendants claim that the possession of Miller during his long occupancy of the land was adverse to plaintiffs and ripened into complete title by prescription. The plaintiffs contend that the possession of Miller, his tenants, and the defendants was that of a co-tenant, and was not adverse to plaintiffs' rights. The question to be determined in this case is: Was the possession of the land by Miller or his grantees adverse to the rights of plaintiffs? If so, did it continue a sufficient length of time to bar plaintiffs' right of entry?

2. The presumption is that the entry by one tenant in common is not hostile to the rights of his co-tenants; but this presumption is a disputable one, and there is now no serious doubt but that one tenant in common may disseise another, and by his acts of disseisin sufficiently long continued acquire prescriptive title as against his co-tenants. *Lavelle* v. *Strobel,* 89 Ill. 370; *Boyd* v. *Boyd,* 176 Ill. 40 (51 N. E. 782: 68 Am. St. Rep. 169); *Joyce* v. *Dyer,* 189 Mass. 64 (75 N. E. 81: 109 Am. St. Rep. 603). Mr. Freeman in his work on Co-Tenancy (quoted in *Northrop* v. *Marquam,* 16 Or. 173, at page 190: 18 Pac. 449, at page 459), states the principle thus:

"Therefore, as a general proposition, the entry of one co-tenant inures to the benefit of all. But this proposition is based upon the supposition that the entry is made

either *eo nomine*, as co-tenants, or that it is silently made, without any avowal in regard to it, or without notice to a co-tenant that it is adverse. As both have an equal right to the possession, the law presumes that if one only enters, and takes the rents and profits, he does this act as well for his companion as for himself." Freeman, Co-Tenancy (2 ed.), Section 166.

" * * The continued possession of a co-tenant, whether the entry was made by himself alone or in connection with his companions, is the possession of all the co-tenants." Freeman, Co-Tenancy (2 ed.) Section 167.

But it is equally well settled that one tenant in common may oust his co-tenant and make his possession adverse. Freeman, Co-Tenancy (2 ed.), Sections 221, 228, *et seq.*; 1 Washburn, Real Prop. (6 ed.) Section 883. In Section 229, Freeman, Co-Tenancy (2 ed.), the author continues:

"Another element is necessary in order to make it sufficient to found an adverse holding upon, and that is notice of such exclusive and hostile claim to the joint owner out of possession. When one joint owner is in possession of the whole, the legal presumption is that he is keeping possession, not only for himself, but for his co-tenants, according to their several interests, and the other joint owners have the right to so understand, until they have notice to the contrary; and the statute would only run from the time of such notice."

3. The possession of one who recognizes or admits title in another, either by declarations or conduct, is not adverse to the title of such other, until such occupant has changed the character of his possession either by express declarations or by the exercise of actual ownership inconsistent with a subordinate character. *Busch* v. *Huston*, 75 Ill. 343.

4. A co-tenant will not be permitted to claim the protection of the statute of limitations, unless it clearly appears that he has repudiated the title of his co-tenant and is holding adversely to him. *Phillipson* v. *Flynn,*

83 Tex. 580 (19 S. W. 136); *Anderson* v. *Stewart,* 15 Tex. 285.

5. Evidence to show adverse possession by one co-tenant must be much clearer and stronger than between strangers to the title. *Newell* v. *Woodruff,* 30 Conn. 492. It has been held that where a co-tenancy is recognized by one in posession of realty, who afterwards, for a valuable consideration, conveys the entire property by warranty deed, which deed is recorded, and five years later receives a re-conveyance, for value, by a like instrument, such conveyances amount to a disseisin of his co-tenants, and starts the statute of limitations running against their right of recovery. *Dawson* v. *Edwards,* 189 Ill. 60 (59 N. E. 590).

6. A sale and conveyance of the whole title to a tract of land by one co-tenant thereof, followed by adverse possession, amounts to an ouster or disseisin of the other co-tenants, and limitations will begin to run against them. *Steele* v. *Steele,* 220 Ill. 318 (77 N. E. 232).

7. Where a husband and wife are tenants in common, and on the husband's death the wife conveys the entire property, such conveyance is an actual ouster of her co-tenants, the husband's heirs, such as will lay the foundation for the claim of adverse possession by the grantee. *Murray* v. *Quigley,* 119 Iowa, 6 (92 N. W. 269: 97 Am. St. Rep. 276). Also, where one tenant in common attempts to convey by warranty deed the whole estate in fee, and his grantee records his deed, and by virtue thereof enters upon the estate, and claims and holds exclusive possession of the whole thereof, the possession and claim are adverse to the title and possession of his co-tenant and amount to a disseisin. *Hanson* v. *Ingwaldson,* 77 Minn. 533 (80 N. W. 702: 77 Am. St. Rep. 692); *Sweetland* v. *Buell,* 164 N. Y. 541 (58 N. E. 663: 79 Am. St. Rep. 676). The act on the part of all the tenants in common in executing a deed with full

covenants of warranty purporting to convey the entire estate is an ouster of the other co-tenants. *Nehr* v. *Armijo*, 9 N. M. 325 (54 Pac. 236).

8. Mr. Justice MOORE, in *Rowland* v. *Williams*, 23 Or. 515, at page 521 (32 Pac. 402), says that adverse possession is founded upon the intent with which the occupant has claimed and held possessio.n In the case at bar there is no question but that Miller and his grantees and heir, for a period of about 57 years, held actual, exclusive, notorious, and visible possession of the claim, paid the taxes thereon, and appropriated to their own use all the products of the land, without any objection being made by any of the plaintiffs or their ancestors, and without any demand being made by any of them for a participation in the usufruct of the land. Coupled with these acts and circumstances, the conveyance by Miller of the 160 acres, with full covenants of warranty, and the recording of the deed, was an open declaration to all persons that he was the owner of the land. Edgar's entrance upon the land in 1875, the construction of a house thereon, and cultivation and improvement of the tract, the retention of the rents and profits for two seasons, the sale and conveyance to Maxfield, who built another house thereon and continued to occupy the land in like manner until November 27, 1882, when by a similar deed he conveyed the tract to Miller, all such deeds being duly recorded—these acts taken together were sufficient notice to, and amounted to a disseisin of the other co-tenants, and the statute of limitations would then commence to run. After that time, and for at least 27 years, the possession of the land by Miller and his heirs, Mrs. Grant, was adverse to plaintiffs, and their right of entry upon the premises is barred. Such possession by the defendant Nellie E. Grant and her ancestor Mr. Miller ripened into an absolute title in fee to the land.

9. The plaintiffs seek to avoid the force of this defense and affirmative claim by asserting that, after the death of Mrs. Margaret A. Miller, Mr. Miller stated on different occasions that he intended to surrender the land to the heirs of his former wife; and for the further reason that plaintiffs assert that they consulted attorneys at different times, about 30 years ago, and were informed that Miller had an estate by the curtesy in the land, and that they could do nothing in regard thereto as long as Miller lived, and that the latter so understood and claimed the land in that manner. Whatever force should be given to this phase of the case prior to the conveyance of the 160 acres by Miller to Edgar in 1875, after that time for plaintiffs and their ancestors to allow Miller and others, not members of either family, to sell and convey the land, occupy, improve, and appropriate the benefits thereof to their exclusive use, was contrary to the usual order of events. It does not appear that any attempt was made at any time to oust Edgar or Maxfield, or to change the order of things, or that they were ever advised that they could not do so. But for a long time thereafter they acquiesced in all that was done and slept upon their rights. This long submission to such use of the land certainly justifies the presumption that they regarded themselves as out of possession, or for some other reason not entitled to share in the earnings of the property. If they had a right to the land, they were guilty of laches in neglecting to enforce the same for so long a time.

10. As Margaret A. Miller resided upon the land only about six months, and died before the completion of the four years' residence and cultivation, required by the act, her interest in the land terminated upon her death, and Mr. Miller, her survivor, and her heirs took the land directly as donees of the Government of the United States; that is, they took by purchase and not by descent. Under such circumstances, there was no

estate to which the right of curtesy could attach. Therefore Mr. Miller did not have a life estate in the land after Mrs. Miller's death. This rule was laid down, and the question settled in 1880, in the cases of *Farris* v. *Hayes,* 9 Or. 81, and *Hall* v. *Russell,* 101 U. S. 503 (25 L. Ed. 829). After these decisions, plaintiffs and their ancestors with reasonable diligence could have been informed of Miller's right.

It follows that the decree of the lower court must be reversed, and one entered here declaring defendant Nellie E. Grant to be the owner in fee simple of the land in question, and it is so ordered.

REVERSED: DECREE RENDERED.