Argued March 3, affirmed March 16, 1960

# SMITH ET AL *v.* TREMAINE ET UX
### 350 P. 2d 180

*Sam F. Speerstra,* Salem, argued the cause for appellants. On the brief were Rhoten, Rhoten & Speerstra and Richard W. Sabin, Salem.

*Thomas D. McMahon,* Portland, argued the cause for respondents. With him on the brief was R. N. Kavanaugh, Portland.

Before McALLISTER, Chief Justice, ROSSMAN, O'CONNELL and HOLMAN, Justices.

HOLMAN, J. (Pro Tempore)

Narcissus V. Day died intestate February 23, 1936, leaving as an estate the real property here in contro-

versy which had been her family home. Her estate was never probated. She was survived by six children. The Smiths and the Days, who are plaintiffs herein, represent the interests of five of these children, and the defendant, Hattie Tremaine, is the sixth child. The other defendant is her husband.

Narcissus V. Day was quite elderly and had been a widow for some time prior to her death. The defendant Hattie Tremaine was separated from her then husband and, lacking a home of her own, she moved in with her mother for their mutual convenience some six years before her mother's death. They took in roomers and boarders, the mother received a small pension, and the two women eked out a precarious existence. As the mother failed in health, Mrs. Tremaine took care of her. The property was encumbered, and in order to refinance it Mrs. Tremaine was required to sign the note.

Since her mother's death, she has continued to make her home on the premises. Eventually, after great effort, she paid off the note and a claim by the state for money advanced on her mother's pension. She continued to take roomers and boarders, and performed all sorts of miscellaneous employment in an effort to exist. From time to time she requested help with the encumbrances, taxes and repairs from the other heirs, but except for some small payments these requests were not complied with. When the requests were made, the other members of the family apparently were in little better financial condition than she. They indicated to her that she would have to cope with the situation herself. At no time did she pay any rental or make any accounting to them, nor did they request any. She made various requests upon them that they transfer the title to her, but this was

never done. Some of the other children individually made certain counter-proposals to her, such as a life estate, to which she would not accede. They desired that she have a home in which to live, but they were not willing to help her pay the encumbrances and keep the place in condition as long as she occupied it, nor were they willing to give it to her outright. At different times, individual heirs made proposals to give her the property if the others would also consent to do so, but never could all agree upon the same thing at the same time.

The matter thus drifted along until in 1955 this suit was commenced against Mrs. Tremaine and her husband by the present record owners of the other five-sixths of the legal title. The defendants set up as a defense and countersuit title by adverse possession in Mrs. Tremaine. From an adverse ruling of the trial court, affirming plaintiff's title to a five-sixths' interest, decreeing partition, and allowing Mrs. Tremaine credits for money expended for encumbrances, improvements and repairs, defendants appeal.

A co-tenant may hold adversely to the other co-tenant. *Crowley v. Grant,* 63 Or 212, 127 P 28; *Richard v. Page Investment Co.,* 112 Or 507, 228 P 937. However, when a tenant in common, claiming as such, enters upon the common land, he is exercising the right which his title gave him and his resulting possession is presumed to be consistent with his avowed title and therefore to be the possession of his co-tenant and himself. The law recognizes that one co-tenant may oust another, but it can not be done except by acts so distinctly hostile to the rights of the other that his intention to disseise is unmistakable. (See the language of Mr. Justice Taft in the case of *Elder v. McClaskey,* 70 F 529, cited with approval in the case of *Wheeler v.*

*Taylor,* 32 Or 421, 426, 52 P 183, 67 AmStRep 540.)
Evidence to show adverse possession must be clearer
and stronger than between strangers to the title. *Crow-
ley v. Grant,* supra; *Houck v. Houck,* 133 Or 78, 283
P 25, 288 P 213.

■ The evidence indicates that Mrs. Tremaine's at-
titude has been that she is morally entitled to a transfer
of the other heirs' interests, and that therefore they
should give it to her, and that she would not be satis-
fied with anything less than a transfer of the entire
title. She expressed to the other heirs the view that
she had taken care of their mother, paid the encum-
brances and taxes, kept the place up, and was without
a home while they had their homes, and, therefore,
morally she was entitled to it. The evidence indicates
that the attitude of the other heirs expressed to Mrs.
Tremaine is as consistent with a willingness that she
exclusively occupy the property with their consent as
it is with a recognition of her right to the property
or that she was holding it adversely. Their refusal to
put a substantial amount of money into the premises,
while she had all the benefits of occupancy, until some
kind of an agreement was entered into with her con-
cerning the property is not necessarily consistent with
her claim she was holding adversely to them and that
this was a recognition of her ownership. They were
willing that she continue to occupy the premises so she
would have a home, but felt that if she did so she
should struggle by herself with the problems of repairs,
taxes and mortgage payments.

We do not believe that the attitude and actions of
Mrs. Tremaine are sufficient to constitute an ouster
of the rights of the other heirs and to put them on
notice that she was holding adversely to their inter-
ests. Our view of the evidence is that her occupancy

is as consistent with consent by the other heirs as it is with adverse holding by her. We can not say that the testimony here discloses such clear and convincing evidence of adverse possession as the law requires.

■ Defendants also claim that the other heirs have been guilty of laches in allowing Mrs. Tremaine to cope alone with all the difficulties presented in keeping the property and in allowing her during all this time to have the unmolested exclusive possession of the property. The actions of the heirs were also consistent with a willingness that she occupy it with their consent, so that she could maintain a home, as long as she wished to undertake to surmount the difficulties involved in holding on to and keeping up the premises. We can not say that the record discloses by a preponderance of the evidence that the heirs were guilty of laches.

The decree of the trial court is affirmed.