No. 47,117

WILSON J. MOREHEAD and AUDRA E. MOREHEAD, *Appellants*, v.
EARL K. PARKS, *Appellee*.

(518 P. 2d 544)

Opinion filed January 26, 1974.

*Charles S. Arthur, III,* of Manhattan, argued the cause, and *Charles S. Arthur* and *Charles D. Green,* of Manhattan, were with him on the brief for the appellants.

*Howard Fick,* of Manhattan, argued the cause, and *Dan H. Myers,* of Manhattan was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for the possession of real estate. The trial court found the defendant had proved title by adverse possession, and so ruled.

Suit was originally instituted by Mary Grace Johnson (plaintiff), and Mary Grace Johnson Trust, Lloyd Carlson, Trustee (plaintiff), against Earl K. Parks, (defendant-appellee), alleging ownership of legal title to certain described real estate and seeking a judgment for its possession. In his answer, Parks (1) denied plaintiffs owned legal title to the subject property; (2) asserted plaintiffs' action was barred by K. S. A. 60-503 because Parks has adversely possessed the subject property for more than fifteen years; and (3) asserted that the question presented in this case had been settled by agreement of plaintiffs' and defendant's predecessors in title. Thereafter, Wilson J. Morehead and Audra E. Morehead (intervening plaintiffs-appellants) were allowed to intervene under K. S. A. 1973 Supp. 60-224 (*a*) since they were purchasers of the subject real property in dispute under a contract. The case was tried before the district court of Riley County, Kansas, which found that Parks had been in open, exclusive and continuous possession of the subject property for more

than fifteen (15) years under a belief of ownership, and it therefore quieted title against the plaintiffs and intervening plaintiffs. The Moreheads have duly perfected an appeal.

The real property which is the subject of this litigation is located in Riley County, Kansas, and can for brevity be described as:

A six acre tract in the Northwest corner of the Southwest one-fourth of Section Twenty-four (24).

It is roughly the shape of an east-west rectangle, measuring 292 feet in width and approximately 1,000 feet in length. Its eastern boundary is the bank of the Kansas river. Over the years as the river course has changed the subject property has varied in size from six to eight and one-half acres. The subject property is characterized by the parties as accretion land, that is, it became available as farmland when the course of the Kansas river gradually moved eastward, sometime in the early part of this century.

The appellee was born in 1906 less than a mile from the subject property. He testified that Mary and Will Parks, his aunt and uncle, began farming the subject property long ago as part of their seventeen and one-half acre field adjacent to the subject property on the west. He assisted with the farming operations many times. As long as he can remember the subject property has been bounded on the south and north by fences. The fence wire disappeared in the 1951 flood, but the fence posts still remain to mark the boundary. In 1945 appellant purchased from Mary Parks by warranty deed the seventeen and one-half acre field adjacent to the subject property. In 1947 Mary Parks executed a quitclaim deed to appellant conveying her interest in the subject property described as follows:

"Tract number six (6) in the N. W. ¼, of Section Twenty-four (24), Township Ten (10), Range Eight (8) in Riley County, Kansas, containing 8.46 acres more or less." (Emphasis added.)

When the appellee purchased the land by quitclaim deed he believed it properly conveyed the subject property to him, since that was the property his aunt and uncle had farmed for over 30 years. However, the quitclaim deed failed to properly describe the subject property. The deed described a tract "in the northwest one-fourth of 24-10-8," whereas the description should have been "in the northwest *corner of the southwest* one-fourth of 24-10-8."

Mary Parks did not own or farm any land in the northwest quarter. Presumably the description in the quitclaim deed was a mistake but the appellee has never attempted to correct it, nor

does he presently seek to correct the description. He is relying solely upon his claim of adverse possession. (K. S. A. 60-503.)

.The appellee was aware at the time he purchased the subject property that previously there had been a dispute between Mary and Will Parks and the Worrels, who owned the land directly south of the subject property and who are the appellants' predecessors in interest, about the ownership of the subject property. However, according to the appellee, the Parks and the Worrels agreed on the present boundary line in 1931. He was not aware of any dispute concerning the subject property at the time he purchased it, nor did anyone indicate to him that he was not entitled to farm it at any time.

The appellee testified that he alone farmed the subject property since 1947 and put in a crop every year. He considered the subject property his at all times since 1947. In 1947 he filed the quitclaim deed with the register of deeds and paid taxes accordingly. Though he thought he was paying taxes on the subject property, he actually was not since the quitclaim deed incorrectly described the property. When the Agricultural Stabilization and Conservation program was promulgated by the federal government in the early 1960s appellee signed up all the property he farmed. He believed he was including the subject property, however, he described it under the erroneous quitclaim deed description. Sometime in 1970 (this action was initiated in April of 1971) he corrected the description of the subject property with the ASC office.

Neighbors who have resided near the subject property for many years corroborated appellee's testimony that he farmed the subject property exclusively, continuously and openly from 1947 until the trial date. At least two witnesses were able to confirm that the subject property's boundaries have remained the same since the early 1930s.

The evidence of the original plaintiffs (who have not appealed from the trial court's judgment) and appellants (intervening plaintiffs below) consisted primarily of an attempt to establish title by showing that the plaintiffs had legal paper title to the subject property, and by demonstrating that appellee's quitclaim deed did not properly describe the subject property.

Trial by jury was waived by the parties, and the trial court found the appellants were the legal titleholders to the subject property; but that the appellee had been in open, exclusive and continuous

possession of the subject property for more than fifteen years, at all time under a belief of ownership; and that there was ". . . absolutely no testimony as to an argument as to boundary lines." The court thereupon entered judgment for Earl K. Parks (appellee) quieting title in his name against the plaintiffs and intervening plaintiffs.

The appellants' primary point on appeal is that the trial court erred in finding as fact that there was ". . . absolutely no testimony as to an argument as to boundary lines." Appellants contend there was a dispute as to the true boundary lines of the subject property, and that when there is such a dispute a person cannot establish belief of ownership to acquire title by adverse possession. Appellants cite the comments concerning K. S. A. 60-503 appearing in Vernon's Kansas Statutes Annotated, Code of Civil Procedure (Fowks, Harvey, Thomas) and set out in *Stark v. Stanhope,* 206 Kan. 428, 433, 480 P. 2d 72, in which Professor Melvin C. Poland stated:

"Belief of ownership as a substitute for 'hostile' holding is not without limitation. In cases where there has been an admission or recognition of doubt or uncertainty as to the true boundary line the requisite 'belief of ownership' does not exist under the statute. . . ." (p. 7.)

The appellants concede, however, this court is bound by the trial court's determination of fact when it is supported by evidence. (*Hale v. Ziegler,* 180 Kan. 249, 303 P. 2d 190; and *Callan v. Biermann,* 194 Kan. 219, 398 P. 2d 355.)

The appellants in their brief attempt to demonstrate that the appellee farmed the subject property knowing its boundary lines were disputed.

The appellants say the appellee's counsel recognized a boundary line dispute when he said in his opening statement:

". . . [T]his is a typical boundary line dispute where both sides of the land are merely arguing about where the line is. Now, this is what the cases are talking about, when they say this belief of ownership does not suffice for a boundary line. *This is not a boundary line question,* this is a land that sticks out where it [is] bounded on three sides by land owned by the defendant." (Emphasis added.)

Although we are not given the opening statement in full context, it appears, as appellee contends, that counsel was discussing previous decisions of this court and distinguishing them from the facts in the instant case. He made it clear this case does not involve a boundary line dispute.

The appellants further assert that the appellee testified he intended to farm the property deeded him in 1947 by his aunt, that the quitclaim deed failed to convey the subject property, and that the accretion land onto Section 23 did not include the subject property. This, they argue, demonstrates the appellee was involved in a dispute concerning boundary lines concerning the subject property which precludes him from claiming the property by adverse possession under belief of ownership. We cannot agree.

There is nothing in the record to support the appellants' assertion that a boundary line dispute existed between the parties, and the trial court's finding must be affirmed.

The evidence is clear that the appellee recognized there had been some dispute over the property in the early 1930s, but it was his belief when he began farming the property in 1947 that it belonged to him. This belief was made clear by the appellee's testimony:

"When I took the deed, I believed Aunt Mary owned the land, and the only thing I had to do was to have the abstract cleared up and that it was alright just the way it was. I didn't feel that there was anybody in the world that could keep me from getting an abstract to my land. . . ."

Under K. S. A. 60-503 a person is entitled to real property by adverse possession when he has been in open, exclusive and continuous possession of such real property for a period of fifteen years, either under a claim knowingly adverse to the true owner or under a belief of ownership. This statute has been discussed, construed and applied in *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 502 P. 2d 672; and *Stark v. Stanhope*, supra.

Appellants next contend the trial court erred in finding the subject property was listed with the Agricultural Stabilization and Conservation office. They argue that if appellee "was truly open about his possession of the property he should have signed it with the ASCS office." A careful reading of the record does not disclose that the trial court made such a finding. It is clear from the appellee's testimony that he believed he was listing the subject property with the ASC in the early 1960s when he registered all his other land. However, he used the inaccurate description contained in the 1947 quitclaim deed, so it is technically true that he did not register the subject property with the ASC office by the correct description. This fact does not preclude appellee from openly possessing the subject property. Certainly an accurate registration of the subject property with the ASC would have been an additional

manifestation of appellee's belief of ownership, but it is not conclusive. In the instant case there is ample evidence to support the trial court's finding that appellee farmed the subject property openly, continuously and exclusively and under a good faith belief of ownership.

The judgment of the lower court is affirmed.