(574 P.2d 217)
No. 48,780

HOWARD RENENSLAND and SHIRLEY J. RENENSLAND, *Appellants,* v. ABRAM ELLENBERGER, *et al., Appellees.*

Opinion filed November 18, 1977.

*Robert D. Beall,* of Leavenworth, for the appellants.

*E. Roger Horsky,* of Horsky & Pray, of Leavenworth, for the appellees.

Before ABBOTT, P.J., SPENCER and PARKS, JJ.

ABBOTT, J.: This is an appeal from a judgment of a district court denying plaintiffs' prayer that title to real estate be quieted in them. The court quieted title in the plaintiff-appellant, Howard Renensland, and in the defendants-appellees, who are Howard Renensland's five brothers, three living sisters, and the three children of a deceased sister. The court also decreed partition.

All of the parties to this appeal, other than plaintiff's wife, Shirley J. Renensland, are the heirs of George Renensland, deceased. George Renensland died in 1942.

The real estate in question consists of approximately 160 acres

and lies to the east of the Missouri Pacific Railroad and abuts the west bank of the Missouri River. Prior to 1954, the quarter section had on occasion been part of the river channel and was overgrown with timber. The property was subject to regular flooding. Plaintiffs reclaimed the land by removing timber, building levees, constructing ditches and flood gates, and leveling the land to provide drainage. None of the witnesses disputed the fact plaintiffs expended a considerable sum of money to improve the land. Plaintiffs leased the farm land to a third party on a sharecrop basis. Rent was never paid to any of the other heirs, nor was an accounting ever requested or given.

In 1972, the heirs (excluding plaintiff) decided to sell the family land and they advertised it for sale. Forty acres not involved in this case were sold, and the proceeds were divided equally. Plaintiffs then filed this quiet-title action naming other parties and the appellees, Addison A. Renensland, Gilbert G. Renensland, Wesley Renensland, and Elaine Nichols, as party defendants. The four named defendants along with Clifford Renensland, Russell Renensland, Bertha Spain Whicker, and Winifred Alfrey filed an answer and "cross-petition" setting out their claim of ownership and requesting that title be quieted in them and that the land be partitioned. The three children of Mabel Ritchie, individually, filed voluntary entries of appearance. The plaintiffs did not file a reply to the cross-petition. A pretrial conference was conducted. However, no record was made and no pretrial order was filed. When the plaintiffs' attorney made his opening statement, he announced an alternate request for the value of improvements made by plaintiffs. During the course of the trial to the court, plaintiffs presented evidence without objection on the issue of improvements. No request was made at any stage of the proceedings to amend the pleadings.

The trial court found that plaintiffs' evidence failed to establish they had been in open possession of the real property in question within the meaning of K.S.A. 60-503 and that plaintiffs had not established their possession to be under a belief of ownership. The court then found that any claim plaintiffs may have had for the value of the improvements made to said real property was not properly before the court in this action and denied plaintiffs' prayer to quiet title in them. Title was then quieted in the names of the heirs of George Renensland, and a decree of partition was entered.

Plaintiffs then filed a motion requesting the trial court to amend its findings, to make additional findings, and, in the alternative, to clarify the judgment. The motion was denied and this appeal followed.

Plaintiffs contend the trial court erred in not making findings of controlling facts and controlling principles of law. Basically, plaintiffs' objection is twofold: That one cannot ascertain the basis for the court's conclusion that the plaintiffs' claim for the value of improvements was not before the court, and that the court disregarded evidence of the value of improvements and failed to make findings concerning the value of improvements made by plaintiffs.

The trial judge is required by statute to state either orally or in writing the controlling facts (K.S.A. 60-252[a]) and the controlling principles of law (Rule No. 165, K.S.A. 60-2702a).

The findings of fact and conclusions of law must be adequate to permit meaningful appellate review and should be sufficient to resolve the issues and advise all concerned of the reasons for the decision and the standards applied by the trial court. (*Mies v. Mies,* 217 Kan. 269, 535 P.2d 432; *Read v. Estate of Davis,* 213 Kan. 128, 515 P.2d 1096; *Andrews v. Board of County Commissioners,* 207 Kan. 548, 555, 485 P.2d 1260.)

The findings and conclusions could have been expanded by the trial court in this case and the decision thus strengthened. However, a general finding in favor of defendants and against the plaintiffs raises a presumption that the trial court found all facts necessary to sustain the decision. (*Adventure Line Mfg. Co. Inc. v. Western Casualty & Surety Co.,* 214 Kan. 820, 822, 522 P.2d 359.) In view of our disposition of this case, the trial court's findings of fact and conclusions of law are sufficient to resolve the issues and permit meaningful review.

Appellants argue that some of the findings are contrary to the evidence. Some evidence is conflicting, but it is not the function of the appellate court to weigh conflicting evidence or determine the credibility of witnesses. That function properly belongs to the trier of facts. (*Schreiner v. Schreiner,* 217 Kan. 337, 340, 537 P.2d 165.) There is sufficient evidence in the record to support the trial court's findings with the exception of the trial court's ruling that the question of the value of improvements was not properly before the court. That issue will be dealt with hereinafter.

Plaintiffs argue that the trial court erred in finding that the plaintiffs were not in open possession under a belief of ownership within the meaning of K.S.A. 60-503.

Whether or not a possessor acquires title by adverse possession is a question of *fact,* and the resolution of such a factual question is binding on appeal if based upon substantial competent evidence. (*Truck-Trailer Supply Co. Inc. v. Farmer,* 181 Kan. 396, 311 P.2d 1004; *Ames v. Brooks,* 179 Kan. 590, 297 P.2d 195.)

Plaintiffs rely on four cases to support their position that the requirements of K.S.A. 60-503 were satisfied. A review of the cases discloses they are of no help to plaintiffs.

In *Morehead v. Parks,* 213 Kan. 806, 518 P.2d 544, the defendant asserted adverse possession as a defense to a quiet-title suit. Defendant received title by a quitclaim deed from an aunt who had been in possession for thirty years. The deed erroneously described the real property. The defendant farmed the land, paid the taxes, participated in soil conservation programs, and was in sole possession of the property. The trial court determined defendant had been in open possession for the required fifteen-year period. The only similarity to the case at hand that favors plaintiffs is the fact the adverse possessor raised crops and participated in soil conservation programs. Those two factors were not determinative factors in the court's decision. There was no fiduciary relationship in *Morehead,* supra, as we have in the case at bar in which the quiet-title action was instituted by a cotenant. Park was in open possession under belief of ownership for over fifteen years and had paid the taxes on the property.

Plaintiffs cite *Armstrong v. Cities Service Gas Co.,* 210 Kan. 298, 502 P.2d 672, for authority that constructive notice of what is imparted by public records is no longer a defense to adverse possession. A divided court in *Armstrong,* supra, so held and the court has since affirmed its holding. (*Moore v. Bayless,* 215 Kan. 297, 524 P.2d 721; *Wallace v. Magie,* 214 Kan. 481, 522 P.2d 989; *Morehead,* supra.) However, *Armstrong* dealt largely with the "belief of ownership" concept that the legislature had added to the adverse possession statute. A portion of the case is no comfort to plaintiffs. At page 309, the court stated, "[T]he legislature had in mind an element of good faith, that is, the belief must be in good faith and reasonable under all the facts and circumstances."

The court stated further at pp. 311-312, "The question of what constitutes good faith in one claiming to hold property under a belief of ownership is a question for the trier of the fact." The trial court in this case specifically found that plaintiffs had failed to establish they had been in possession of the real property under a belief of ownership. In *Armstrong,* a search of the records would have revealed the defect in title, and the Supreme Court held it was not required as a condition precedent to good faith that one examine the public records. The case does not involve actual knowledge of what the public records would reveal as does the case at bar. Here plaintiffs had actual knowledge of inheriting a share of the property and participated with three of Howard's brothers in buying other heirs' interest in the property. Howard Renensland accepted a quitclaim deed to that interest as a cotenant with his three brothers.

Plaintiffs then cite *Kalivoda v. Pugh,* 170 Kan. 505, 226 P.2d 857, and *Stark v. Stanhope,* 206 Kan. 428, 480 P.2d 72, as authority that the payment of taxes is not a condition precedent to acquisition of title by adverse possession. In *Kalivoda,* the plaintiff had acquired title by warranty deed from the defendants. A portion of the land conveyed had been platted into lots and blocks in 1891, and through a mistake in the county treasurer's office defendants continued to pay taxes on the lots. Plaintiff brought a quiet-title action claiming title under the warranty deed and by adverse possession. The plaintiff offered to do equity and reimburse defendants for the taxes defendants paid. Defendants claimed title, apparently relying on the payment of the real estate taxes. The court held defendants conveyed their title by warranty deed and the treasurer's error could not destroy the warranty deed. Since plaintiff did not complain about reimbursing defendants for the taxes, the court did not consider whether the payments were voluntarily made with full knowledge on their part and hence a voluntary contribution.

In *Stark,* supra, one of the defendants alleged the adverse possessor had not paid taxes on the disputed real estate. The court pointed out the defendant had not offered proof that defendant had paid the taxes. Indeed, there was no showing the disputed property had ever been assessed for taxation. It was noted there is no statutory requirement that the payment of taxes is an element of adverse possession.

Although the payment of real estate taxes is not a prerequisite to acquiring title by adverse possession, it is proper to consider the issue of payment of taxes as a factor in determining whether a claim of ownership exists or a claim is knowingly adverse.

Our adverse possession statute (K.S.A. 60-503) provides:

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

Plaintiffs, if they are to recover, must do so on the theory they had open, exclusive and continuous possession of the land in question under either (1) a claim knowingly adverse, or (2) a belief of ownership for a period of fifteen years.

The trial court held plaintiffs failed to establish possession under a belief of ownership. This finding was one of fact (*Armstrong,* supra), and the evidence in the record supports that finding. The record discloses the real estate taxes were paid by Addison Renensland largely from funds belonging to all of the parties to this suit; easements had been granted by record owners other than plaintiffs; negotiations were carried on with plaintiffs' knowledge and without objection by plaintiffs concerning the land by members of the family other than plaintiffs; plaintiffs had actual knowledge of the fact that brothers and sisters of Howard individually inherited a share equal to Howard's; plaintiffs were aware that four brothers contributed to a settlement with other relatives and took a quitclaim deed conveying the interests of the adverse relatives to the four brothers as cotenants; testimony was offered that it was intended that all of the brothers and sisters share in the property conveyed by quitclaim deed; Addison paid other bills on the land in question from funds belonging to all the parties; the two brothers, Addison and Wesley, testified plaintiffs had never claimed ownership of the property; and Howard Renensland testified on one occasion that he never told any of his brothers and sisters that the real property was his and they had no claim to it. Where adverse possession is predicated "under a claim knowingly adverse," hostility is an essential element. A hostile holding involves an intent normally evidenced by overt acts or statements. (*Stark,* supra, p. 433.)

When property passes by inheritance to more than one person,

the heirs take the property as tenants in common unless a contrary intent is shown (K.S.A. 58-501). Howard Renensland thus became a tenant in common with the other heirs of his father.

A cotenant who has actual knowledge of the existence of other cotenants cannot hold title adversely to the other cotenants until the other cotenants have knowledge or notice of the fact of the adverse holding. (*Farmers State Bank v. Lanning,* 162 Kan. 95, 174 P.2d 69; *Schwab v. Wyss,* 136 Kan. 54, 12 P.2d 719. See, also, 82 A.L.R.2d 1 [1962].)

The trial court specifically found Howard Renensland did not advise the defendants he considered the land to be his property. Testimony from Addison and Wesley Renensland supports that finding as does a portion of Howard Renensland's testimony. Ample and substantial competent evidence exists to support that finding of fact.

No findings of fact were made to support or explain the trial court's conclusion of law "that any claim plaintiffs may have for the value of the improvements made to said real property is not properly before the court in this action."

Both a quiet-title action and a partition action are equitable in nature. The prayer of the petitions to quiet title filed by plaintiffs and defendants requested equitable relief in "such other and further relief" as the court deemed just and proper. Defendants' partition prayer in part requests the real estate be sold and "the proceeds be divided according to the respective rights of the parties . . . and [for] all proper relief in the premises."

The partition statute gives the trial judge "full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties." (K.S.A. 60-1003 [*d*].) The trial judge has the same authority under the statutes as was exercised by chancery courts under equity practice. (*Knutson v. Clark,* 169 Kan. 205, 217 P.2d 1067; *Johnson v. Burns,* 160 Kan. 104, 159 P.2d 812.) The Supreme Court held in *Thresher Co. v. Judd,* 104 Kan. 757, 180 Pac. 763, that "[a]s a general rule, a court in decreeing partition has power to adjust the equitable rights of all the parties interested in the estate, so far as they relate to and grow out of the relation of the parties to the common property." (Syl. 1.)

The Supreme Court has extended this proposition and stated that the trial court in an equitable action may render the equitable

relief justified by the evidence even though that relief differs from the relief prayed for. (*Benton v. Benton,* 215 Kan. 875, 879, 528 P.2d 1244; *Kline v. Orebaugh,* 214 Kan. 207, 519 P.2d 691.)

An integral part of a partition action is resolving the question of the value of improvements placed on the realty in good faith by the occupant and offsetting the value of the improvements by the rents and profits received by the occupant. Good practice dictates that the request for reimbursements of the value of improvements and offsets should have been pled and covered by a properly drawn pretrial order. It may well be that the value of the improvements will be offset in part, if not entirely, by rent and profits from the land. Indeed, the record would indicate the plaintiffs had no source of income available to them from which to make the improvements other than from crops grown thereon. Prior decisions have allowed a plaintiff in an action litigating ownership of land to make oral application for the value of improvements after or at substantially the same time as the rendition of judgment against him. (*Lemert v. Barnes,* 18 Kan. 9; *Carlyle v. Pee,* 128 Kan. 115, 275 Pac. 1091.) Through the years a practice developed allowing trial courts to try the title questions first and reserve the question of value of improvements and accounting as to rents and profits for a subsequent hearing so long as the issue is finally determined before judgment is entered. (*Carlyle,* supra.)

Orderly procedure requires the claim for improvements and the offset for rents and profits be presented and heard before the decree for partition is entered. The trial court erred in not determining the value of improvements made on the land in good faith by plaintiffs and offsetting the same by rents and profits received by plaintiffs. Justice and equity require a further consideration of the value of the improvements made on the land by plaintiffs in good faith and an accounting and offset to the cotenants of the rents and profits received by plaintiffs.

Affirmed in part, reversed in part, and remanded with directions that the trial court determine the value of any improvements made by plaintiffs in good faith, being mindful that the value of improvements may be more or less than their cost, and offsetting the value of the improvements by the rents and profits received by plaintiffs.