(621 P.2d 437)
No. 51,276

In the Interest of JULIE COOPER, A Juvenile Under Age Eighteen.

Opinion filed December 12, 1980.

*Larry R. Rute,* of Legal Aid Society of Topeka, Inc., for appellant mother.

*Sue Carpenter,* assistant district attorney; *David Skidgel,* guardian ad litem; *Gene M. Olander,* district attorney; and *Robert T. Stephan,* attorney general, for appellee State of Kansas.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

MEYER, J.: The district attorney's office filed a petition January 3, 1979, alleging that Julie Cooper was a deprived child within the meaning of K.S.A. 1979 Supp. 38-802. Julie was the one-year-old daughter of Marilyn Dickey (appellant). Temporary custody was granted to the Department of Social and Rehabilitation Services (SRS) pending hearing of the petition. Appellant was served with summons January 8, 1979, advising her that an attorney had been appointed to represent Julie and that appellant could retain an attorney if she wished. A second summons was

received March 29, 1979, containing the same statements and setting the date for hearing on June 14, 1979.

Appellant appeared without counsel on that date. She was advised by the guardian ad litem at that time that she would have an opportunity to ask questions of the witnesses and could call witnesses herself or she could avoid the trial by admitting to the court that Julie Cooper was not being properly cared for and was, thus, a deprived child. Appellant replied that she did not think her child was deprived. A trial was then held and, partway through the hearing, the court commented that appellant should have retained counsel if she anticipated going to trial and that the court was not obligated under the law to appoint an attorney for her. The court found that Julie was a deprived child in that she was not receiving proper parental care or control necessary to meet her physical, emotional or medical needs at the time of filing of the State's petition.

On appeal, appellant alleges she was deprived of her due process right to have counsel appointed for her and to be so advised. She also claimed that the trial court failed to find and state the controlling facts upon which its legal conclusion was based.

We first address the issue as to whether the court erred in failing to advise the appellant of her right, if indigent, to be represented by court-appointed counsel.

We note that a parent or parents may not be permanently deprived of the custody of their child without appointment of counsel for them if indigent.

K.S.A. 1979 Supp. 38-820 provides:

"No order or decree permanently depriving a parent of his or her parental rights in a deprived child under subsection (c) of K.S.A. 1978 Supp. 38-824, shall be made unless the court has jurisdiction to enter a child custody determination in accordance with K.S.A. 1978 Supp. 38-1303 *and such parent is represented by counsel* and present in the district court or has been served with summons. The judge of the district court shall assign an attorney to any such parent who is unable to employ counsel and may award a reasonable fee to said counsel to be paid from the general fund of the county." (Emphasis added.)

Kansas has also specified, by case law, that counsel is necessary in the event of permanent severance of parental rights. See *In re Brehm,* 3 Kan. App. 2d 325, 594 P.2d 269 (1979); and authorities cited therein. Kansas law is in accord with other jurisdictions which recognize the right to appointed counsel in proceedings where parental rights are terminated. *Matter of Chad S.,* 580 P.2d

983 (Okla. 1978); *State v. Caha,* 190 Neb. 347, 208 N.W.2d 259 (1973); *State ex rel. Lemaster v. Oakley,* 157 W. Va. 590, 203 S.E.2d 140 (1974); *In re: Adoption of R. I.,* 455 Pa. 29, 312 A.2d 601 (1973); *State v. Jamison,* 251 Or. 114, 444 P.2d 15 (1968). See also *Danforth v. State Department of Health & Welfare,* 303 A.2d 794 (Me. 1973), where a finding of neglect operated to terminate parental rights under the statutory scheme in effect at the time of the decision, and *Davis v. Page,* 442 F. Supp. 258 (S.D. Fla. 1977), where the court was authorized to place a child for adoption if it finds that child was abandoned, neglected or abused.

The right to counsel is not statutorily provided for indigents in a deprived child proceeding in which severance of parental rights is not sought. However, a determination must be made as to whether appellant's rights in the custody of her children are so fundamental that due process of law as guaranteed by the Constitution of the United States and the Kansas Bill of Rights requires appointment of counsel.

Even in the absence of statute, the duty to provide counsel may arise because of "inherent authority in courts to provide a fair and impartial trial as guaranteed by Section ten of the Kansas Bill of Rights and the due process clause of the United States constitution." *In re Brehm,* 3 Kan. App. 2d at 327, citing from *State v. Taylor,* 202 Kan. 202, 204-205, 447 P.2d 806 (1968).

Whether such rights are so great and fundamental depends in turn upon how grievous the temporary deprivation of the child is to its parent. Additionally, the question turns on whether appointment of counsel is required by due process at an earlier stage because the parent's rights at a later severance hearing might be affected thereby. It is first necessary that we set out the trial court's power of disposition when a child is found to be deprived.

Under K.S.A. 1979 Supp. 38-824(*b*), the court may make the following orders regarding a child adjudicated deprived, in the absence of an order depriving a parent of parental rights. It may make such deprived child a ward of the court and commit the child to: (1) the custody of either or both of the child's parents; (2) the care, custody and control of a juvenile probation officer duly appointed by the court or other individual; (3) a youth residential facility, subject to the limitations of subsection (*f*) of K.S.A. 1979 Supp. 38-819; or (4) the secretary of social and rehabilitation services. In addition the court may order counseling sessions.

The Fourteenth Amendment to the Constitution of the United States provides that no state shall "deprive any person of life, liberty or property, without due process of law."

In interpreting the due process clause, the United States Supreme Court has established that certain interests cannot be taken away without meeting procedural safeguards. The determination of what procedural safeguards are necessary to afford due process must be evaluated in the light of the nature of the proceeding and the nature of the interest affected. *Mathews v. Eldridge*, 424 U.S. 319, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976).

The extent to which procedural due process must be afforded a litigant is influenced by the extent to which the person affected may be "condemned to suffer grievous loss" and depends upon whether the person's interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Goldberg v. Kelly,* 397 U.S. 254, 262-63, 25 L.Ed.2d 287, 90 S.Ct. 1011 (1970).

In *Stanley v. Illinois,* 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972), it was recognized that an unwed father had a due process right to an administrative hearing to establish unfitness prior to removing children from his custody.

Justice White extensively discussed the interests involved in such a proceeding:

"The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' [Citation omitted.]

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923), 'basic civil rights of man,' *Skinner v. Oklahoma,* 316 U.S. 535, 541 (1942), and '[r]ights far more precious . . . than property rights,' *May v. Anderson,* 345 U.S. 528, 533 (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Massachusetts,* 321 U.S. 158, 166 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska, supra,* at 399, the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma, supra,* at 541, and the Ninth Amendment, *Griswold v. Connecticut,* 381 U.S. 479, 496 (1965) (Goldberg, J., concurring)." 405 U.S. at 651.

It is thus evident that the interest of parents in the custody and control of their children is an interest which has undergone

constitutional scrutiny and received constitutional protection from the Supreme Court.

Whether that interest should be afforded protection by court-appointed counsel in a deprived child proceeding is a question of first impression in Kansas.

The U. S. Supreme Court has recognized the right to appointed counsel in any criminal proceeding by the state where the proceeding might lead to the incarceration of the defendant. *Argersinger v. Hamlin,* 407 U.S. 25, 32 L.Ed.2d 530, 92 S.Ct. 2006 (1972). In *Scott v. Illinois,* 440 U.S. 367, 59 L.Ed.2d 383, 99 S.Ct. 1158 (1979), the court refused to further extend the right to appointed counsel to an indigent defendant in a state criminal proceeding who was not actually faced with loss of liberty, as the Fourteenth Amendment did not require indigents to be afforded counsel when no loss of liberty was involved.

The right to court-appointed counsel has also been extended to persons allegedly in need of hospitalization for mental illness, a matter traditionally labeled both "civil" and "treatment" oriented rather than accusatorial. *Heryford v. Parker,* 396 F.2d 393 (10th Cir. 1968).

In the landmark case of *Gideon v. Wainwright,* 372 U.S. 335, 344, 9 L.Ed.2d 799, 83 S.Ct. 792 (1963), in which the Sixth Amendment right to counsel was extended to state proceedings in all felony cases through the Fourteenth Amendment, the decisive factors in determining that a fair trial could not be had without counsel were the state initiative, state coercive power, and the resources available to the state.

Similarly in "deprived child" proceedings, the state usually brings the action and has at its disposal the investigatory machinery of the state social services department. In many cases, as in the case at bar, members of the local police department have had contacts with the family and are presented as witnesses in the case. The "informal" proceeding usually involves the testimony of psychologists, psychiatrists and other experts who evaluated the performance of the parents. To state that this is a non-accusatorial proceeding is to ignore the fact that it is the parents' ability to raise their children which is on trial, and it is usually the parents who contest the petition. The guardian ad litem is not appointed to protect the parents' interest. It is the accusatorial nature of this proceeding which makes the appointment of counsel necessary to preserve the parents' rights.

Several other jurisdictions have addressed the problem here presented.

In *Matter of Janice K.,* 82 Misc. 2d 983, 372 N.Y.S.2d 381 (1975), assigned counsel was required by due process when the court was authorized to order termination of rights upon certain findings. The court noted that even if rights were not terminated, testimony in the neglect proceeding could be used in subsequent proceedings initiated in order to terminate parental rights.

The following cases represent further authority that due process requires the appointment of counsel even when the proceeding is only to determine temporary custody and further proceedings are needed to terminate parental rights.

In *Crist v. N. J. Div. Youth and Family Serv.,* 128 N.J. Super. 402, 416, 320 A.2d 203 (1974), *aff'd in part, rev'd in part* 135 N.J. Super. 573, 343 A.2d 815 (1975), the court determined that counsel was required by due process in both proceedings:

"Since the proceeding for temporary custody is frequently a prelude to a petition to terminate parental rights, or failure in a temporary custody proceeding may permanently discourage further interest in a final termination proceeding, there is equal justification for legal representation at the earlier, temporary state of the proceeding."

Contra, *In re Cager,* 251 Md. 473, 248 A.2d 384 (1968); *In the Matter of M.D.Y.R.,* 177 Mont. 521, 582 P.2d 758 (1978); *In re Robinson,* 8 Cal. App. 2d 783, 87 Cal. Rptr. 678 (1970), *cert. denied* 402 U.S. 964 (1971).

In *Smith v. Edmiston,* 431 F. Supp. 941 (W.D. Tenn. 1977), the parents initiated an action for habeas corpus and declaratory relief with respect to dependent and neglect procedures whereby custody was removed from parents and placed in the state for placement in a foster home. The court issued a writ of habeas corpus because the proceeding without counsel lacked due process, and custody was returned to parents. The court held that if further proceedings were begun, the parents were entitled to be advised of rights and counsel should be appointed if they couldn't afford one.

In *Matter of Ella B.,* 30 N.Y.2d 352, 285 N.E.2d 288 (1972), an appeal was taken from an order temporarily placing the child in the custody of the Child Protective Services and adjudicating her a neglected child. At a later proceeding to terminate parental

rights, the parent was represented by counsel. In that proceeding, the court refused to terminate parental rights and continued placement with the state. The appellate court ruled that this later hearing with counsel did not cure the defects in the earlier hearing which lacked due process because the parent was not advised of her right to have counsel appointed. The court found that the trial judge's decision to leave the child's custody with the state was influenced by the earlier determination of neglect. The court, however, did not vacate the initial order, but remitted the proceeding to the Family Court for a rehearing at which the appellant would be represented by counsel.

Statistical data compiled in a 1966 study of New York cases going through the Family Court, as taken from Catz & Kuelbs, *The Requirement of Appointment of Counsel for Indigent Parents in Neglect or Termination Proceedings: A Developing Area,* 13 J. Fam. L. 223, 227 (1973-74), revealed:

"[W]here parents went unrepresented against institutional petitioners, 79.5% of the proceedings resulted in neglect adjudications and 16.6% of the petitions were either withdrawn or dismissed; whereas, where the parents were represented, 62.5% of the proceedings resulted in neglect findings, and 37.5% of the petitioners were withdrawn or dismissed. Moreover, in cases where neglect was necessarily found, dispositions of 'placement' for the children occurred far less frequently where the parents were represented by counsel; 40.6% without counsel, 18.2% with counsel. Referring to this statistical study, [one] commentator stated:

" 'Since there is no evidence indicating that the average respondent who can retain counsel is better or less neglectful than one who cannot, the conclusion seems inescapable that a significant number of cases against unrepresented parents result in findings of neglect solely because of the absence of counsel. In other words, assuming a basic faith in the adversary system as a method of bringing the truth to light, a significant number of neglect findings (followed in many cases by a taking of the child from his parents) against unrepresented indigents are probably erroneous. It would be hard to think of a system of law which works more to the oppression of the poor than the denial of appointed counsel to indigents in neglect proceedings.' " Citing from Note, *Child Neglect: Due Process For the Parent,* 70 Colum. L. Rev. 465, 476 (1970).

We conclude that counsel should be appointed even when the custody is only removed temporarily from a parent. It is difficult for us to conceive of a more valuable right than that of a mother to her child. Nor can few things happen to her with more grievous consequences than to be deprived of her child, even temporarily. The *Gideon* line of cases began by forbidding imprisonment for felonies without counsel being provided for the accused. Ultimately that line of cases ended with the proposition that an

accused could not be imprisoned for any period—however brief—without his having been provided with counsel. Counsel must be provided "at critical stages of the proceedings." *Coleman v. Alabama,* 399 U.S. 1, 26 L.Ed.2d 387, 90 S.Ct. 1999 (1970). The theories applicable to these cases should apply as well to matters of child custody. Under statutory and case law today, permanent custody may not be taken with less than full procedural due process. We see no valid reason why this requirement should not be extended to cases where a child is temporarily removed from its parent. Since, before a parent's rights to custody may be severed, there must first be a finding that the child is deprived, that proceeding is certainly a "critical stage" of the later severance proceeding.

Such proceedings are usually a prelude to a termination proceeding and evidence of previous parental neglect is generally considered in the proceeding to terminate the parental rights. The evidence must be viewed as inherently suspect if taken when the parent did not have the advice of counsel, nor the ability to effectively cross-examine the witnesses.

A corollary issue is that because there was no request for appointed counsel, the court never made a finding of indigency. This case must be remanded for a determination of whether or not appellant is indigent.

Appellant's other issue is whether the case should be remanded for additional findings of fact and conclusions of law.

"The requirements of K.S.A. 60-252(a) and Supreme Court Rule No. 165, 225 Kan. lxxii, are in part for the benefit of the appellate court; and when the findings and conclusions of the trial court are not adequate to permit meaningful appellate review, this court has no alternative but to remand the case for new or additional findings and conclusions." *In re Adoption of Chance,* 4 Kan. App. 2d 576, Syl. ¶ 1, 609 P.2d 232, *rev. denied* 228 Kan. 806 (1980).

The court's findings are as follows:

"After hearing all the evidence presented, statements of counsel and Mrs. Dickey; taking note of State exhibits (1) through (14), and taking note of the files and premises herein, the Court finds that the State has more than sustained its burden of proof.

"Whereupon the Court finds that respondent, Julie Cooper, is a deprived child under K.S.A. 38-802(g)(1) in that she was not receiving proper parental care or control necessary to meet her physical, emotional or medical needs at the time of the filing of the State's petition."

There are no facts set out upon which he based his conclusion.

*Renensland v. Ellenberger*, 1 Kan. App. 2d 659, 661, 574 P.2d 217 (1977), while citing the requirement that a trial judge state the controlling facts and law, stated:

"[A] general finding in favor of defendants and against the plaintiffs raises a presumption that the trial court found all facts necessary to sustain the decision."

In this case, there is very little conflicting evidence in the record. The trial court's findings of fact and conclusions of law were sufficient to resolve the issues and permit meaningful review, especially since the main issue was the failure to appoint counsel.

The judgment is remanded with directions that the trial court determine whether appellant was indigent at the time of the "deprived child" hearing. If it is determined that appellant was indigent at that time, then the trial court's judgment herein is reversed and the trial court is directed to appoint an attorney for appellant and to grant her a new trial to determine whether Julie Cooper is a deprived child. In such event, the court is directed to make specific findings of fact and conclusions of law.

If it is determined that appellant was not indigent at the time of such deprived child hearing, the judgment of the trial court is affirmed.